## THE STATE v. JAMES PATTEN.

Whenever a prisoner's sanity at the time of the offence alleged, is in question, the rule that he may control or discharge his counsel at pleasure, should be so far relaxed as to permit them to offer evidence on these points, even against his will.

In a criminal case, when after the close of the testimony on behalf of the State, the counsel of the accused alleged the prisoner's insanity before, at the time of, and since the killing, and offered to introduce testimony in proof of the fact, and thereupon the prisoner arose and repudiated such defence, and discharged his counsel, and the court gave the case to the jury without further evidence or pleadings on behalf of the prisoner—*Held:* that the court erred in allowing the prisoner under the circumstances, to discharge his counsel, and erred in not allowing them to offer proofs on the question of insanity.

APPEAL from the First District Court of New Orleans, *Robertson,* J.

*Isaac E. Morse,* Attorney General, for the State, cited *Rex* v. *Oxford,* S. C. T. R. 525; Art. C. P. p. 11, et seq.; 1 Hale, P. C. p. 33; *U. S.* v. *McGhee,* 1st Curtis U. S. C. R.

*Larue & Whitaker* and *A. Hennen,* for defendant and appellant.

SPOFFORD, J. Upon the trial of *James Patten* for the murder of *Walter Turnbull,* the following bill of exceptions was taken by the prisoner's counsel:

"Be it remembered, that on the trial of this cause, on the 20th day of March 1854, after the evidence on the part of the State was closed, and when the counsel of the prisoner were proceeding to prove, by the evidence of the witnesses, the insanity of the said prisoner at the time of the killing, set forth in the indictment, and a long time before, and even since the said killing, the said prisoner arose and objected to, and repudiated the said defence, and insisted upon discharging his counsel and submitting his case to the jury without any further evidence or action of his counsel in his defence; his counsel opposed and remonstrated against the prisoner's being permitted to do so, alleging that they were prepared to prove the defence by clear and irresistible testimony, but the court overruled the objection of the said counsel and permitted the prisoner to discharge his counsel, and refused to hear them further in his defence, and gave the case to the jury without any further evidence or pleading on his behalf; to all which opinion and ruling of said court, the defendant's said counsel excepts and prays his exceptions may be signed," &c.

[Signed,]                                    JNO. B. ROBERTSON, Judge.

There was a verdict of "guilty, without capital punishment," and, after his former counsel had, in the quality of *amici curiæ,* attempted to obtain a new trial and an arrest of judgment without success, the prisoner was sentenced to hard labor for life in the penitentiary.

From that judgment the present appeal has been taken.

The sanity or insanity of the prisoner is a matter of fact; the admissibility of evidence to establish his insanity, under the circumstances detailed in the bill of exceptions, is a matter of law, and the only matter which the constitution authorizes the tribunal to decide.

The case is so extraordinary in its circumstances that we are left without the aid of precedents.

In support of the ruling of the District Judge, it has been urged that every man is presumed to be sane until the contrary appears, and that a person on trial for an alleged offence has a constitutional right to discharge his counsel at

any moment, to repudiate their action on the spot, and to be heard by himself; hence the inference is deduced that the Judge could not have admitted the evidence, against the protest of the prisoner without reversing the ordinary presumption, and presuming insanity.

In criminal trials, it is important to keep ever in mind the distinction between law and fact, between the functions of a Judge and those of a jury.

It was for the jury and the jury alone to determine whether there was insanity or not, after hearing the evidence and the instructions of the court as to the principles of law applicable to the case.

By receiving the proffered evidence for what it might be worth, the Judge would have decided no question of fact; he would merely have told the jury : "The law permits you to hear and weigh this evidence ; whether it proves any thing, it is for you to say."

By rejecting it, he deprived the jury of some of the means of arriving at an enlightened conclusion upon a vital point peculiarly within their province, and in effect, decided himself, and without the aid of all the evidence within his reach, that the prisoner was sane.

It is idle to say that the legal presumption, and the prisoner's own declarations, appearance, and conduct on the trial, established his sanity to the satisfaction of both Judge and jury; for, presumptions may be overthrown, declarations may be unfounded, and conduct and appearances may be deceitful ; and the prisoner's counsel, sworn officers of the court, with their professional character at stake upon the loyalty of their conduct, alleged that they stood there prepared to prove by what they deemed clear and irresistible testimony, that the accused was insane at the time of the homicide, long before, and ever since ; so that the sole inquiry now is, not whether they or the court were right as to the fact of sanity, upon which we can have no opinion, but whether they should have been allowed to put the testimony they had at hand before the jury, to be weighed with the counter evidence.

If the prisoner was insane at the time of the trial, as counsel offered to prove, he was incompetent to conduct his own defence unaided, to discharge his counsel, or to waive a right.

Upon the supposition that the counsel were mistaken in regard to the weight of the evidence they wished to offer, as they may have been, still its introduction could do the prisoner no harm, nor could it estop him from any other defence he might choose to make on his own account; neither could it prejudice the State, for it is to be presumed that the jury would have given the testimony its proper weight; if, on the other hand, the counsel were not mistaken as to the legal effect of this evidence, the consequences of its rejection would be deplorable indeed.

The overruling necessity of the case seems to demand that, whenever a prisoner's soundness of mind and consequent accountability for his acts are in question, the rule that he may control or discharge his counsel at pleasure, should be so far relaxed as to permit them to offer evidence on those points, even against his will.

Considering, therefore, that it would be more in accordance with the sound legal principles and with the humane spirit which pervade the criminal law, to allow the rejected testimony to go before the jury, the cause must be remanded for that purpose.

It was said in argument, on behalf of the State, that the alleged insanity was, at most, but a monomania upon another topic, which could not exempt the prisoner from responsibility for the homicide.

The Judge will instruct the jury in regard to the principles of law which govern this subject, when all the facts shall have been heard. At present, the discussion is premature.

It is, therefore, ordered that the judgment of the District Court be reversed, the verdict of the jury set aside, and the cause remanded for a new trial, according to law.