### H. Hinds Holmes et al. *v.* Robert F. McGinty et al.

1. Husband and wife—Suretyship—Mortgage—Assignment.—Defendants, being husband and wife, executed a mortgage on property of the former, to sureties on his official bond as tax collector, to indemnify them against loss as such sureties. Thereupon the sureties advanced to their principal $3,000, each to settle his officia liabilities, taking his notes alone for the amount, which notes contained these words: "Secured by mortgage on real and personal estate, against loss on my bond as tax collector." On bill by assignees, to subject the mortgaged property to payment of the notes, it was *Held:* That the coverture of one of defendants, that she had not signed the notes, that the notes not being mentioned in the mortgage, that the money advanced to the other defendant by the mortgages had been borrowed by them and not repaid, and that the transfer of the notes to the complainants was to defend their creditors, were all immaterial facts, constituting no defense.

2. Mortgages—Notes—Assignment.—The assignment of promissory notes secured by mortgage, is, in equity, an assignment of the mortgage, which follows the debt as its incident, for the benefit of whomsoever may own it.

Error to the chancery court of Jefferson county. Smiley, J.

Plaintiff in error assigned the following errors:

1st. The court erred in the decree rendered in this cause, because there was equity on the face of the bill of complaint, and the allegations were sustained by the evidence.

2d. Because the allegations of the bill, the exhibits filed therewith, and the proof submitted at the hearing, show that the complainants were entitled to a decree in their favor, which this court will render in accordance with the law.

*Thomas Reed*, for plaintiff in error.

The court below ought not to have dismissed this bill, because the defendants admitted enough in their answer to authorize a decree against them. The defendants admit, by not denying it, the execution of the mortgage, the receipt of the $6,000; and that it was applied to the payment of the ·

defendants' liabilities. They admit that the notes were given, as shown on the face, for the advance of money, as contemplated by the mortgage. The assignment of these notes subrogated the complainants to all the rights of the original payees. Complainants are third parties, with no notice of any equities between defendants and Holmes and Pintard, and are clearly entitled to enforce their rights in this court. Holloway v. Moore, 4 S. & M., 594; Maury v. Jeffries, ib., 87; Story on Prom. Notes, § 193; 34 Miss., 56; 37 Miss., 688.; Rev. Code, art. 44, p. 547; 34 Miss., 492.

*T. J. & F. A. R. Wharton*, on same side.

There is nothing in the objection that Mary F. McGinty was a married woman at the date of the mortgage. She is a party to the bill and to the mortgage *pro forma* merely. It was not necessary, in order to divest her of dower, that she should join in the conveyance. As to the objection of the want of the wife's signature to the notes, we reply that it was not at all necessary that she should sign them. These notes, although not described in the mortgage, recite upon their face that they were secured by mortgage on real and personal property "against loss on my bond as tax collector." Nothing could be more definite. This language clearly implies that the maker was tax collector, and that the payees were sureties on his official bond.

To the objection that the mortgage has not been assigned to complainants, we answer that the mortgage and the notes are sufficiently connected. The assignment of the notes operated an assignment of the mortgage also.

The next point in the answer is a denial that Wm. Holmes and C. Pintard advanced to said McGinty, of their own money, $6,000. The bill alleges substantially that McGinty was unable to pay to the state, money collected by him as tax collector, and to avoid the heavy damages incident to a failure; Wm. Holmes and C. Pintard, each advanced him $3,000, to enaule him to make his settlement in time, and that the money was so used and applied. The answer to this

is wholly evasive. It does not deny the advance of the money or that it was so used, but denies that it was advanced of their own money. Whether the money was their own or not is wholly immaterial.

As to the defense that the complainants had borrowed the money they advanced to McGinty, and that judgments had been obtained against them by the lender for the same, and that the execution had been returned "no property found," it is not perceived how this can have the slightest effect as between McGinty and the parties who advanced the money to him. The lender may (if the money was borrowed) have instituted proceedings to reach the money in the hands of McGinty, either by garnishment against him after return of *nulla bona*, or judgment against Holmes and Pintard by proceeding in chancery.

SIMRALL, J.:

In October, 1858, Robert F. McGinty was elected sheriff and tax collector of Jefferson county, and shortly after executed bond for the faithful discharge of his duties as tax collector, in the penalty of $25,259, with Thos. H. Bradford, J. W. Birch, William Holmes, and Claudius Pintard as his sureties. In June, 1860, McGinty having collected a large amount of taxes for the state, whilst *in transitu* to the capital, pay them into the state treasury, was robbed at Vicksburg of the money. The sureties being advised that unless the taxes were paid into the treasury within the time prescribed by law they would be responsible on their bond for the further sum of thirty per centum damages on the principal amount for which the collector was in default. It was therefore arranged that they should raise and advance to McGinty $6,000 to enable him to supply the amount of his loss, on the execution of a mortgage by himself and wife on certain real and personal property. Accordingly McGinty and wife executed a mortgage on real and personal property owned by him, to the sureties, to secure them the payment of any moneys they might then pay or thereafter pay on account of

their suretyship. The mortgage, by mistake, recited the date of the bond as on the 3d of January, 1861, when the true date was the 3d of January, 1860, which deed was duly acknowledged, and, on the day of its execution, filed for record. Thereupon Holmes and Pintard, two of the sureties, advanced to McGinty $3,000 each, to put him in funds to settle his indebtedness to the state, who so applied it. McGinty, on the 28th of January, 1860, made and delivered to Holmes his promissory note for $3,000, at one day after date. On the 28th of June, 1860, a note for like amount was made and delivered to Pintard. Both notes bear interest from the 28th of June, 1860, and contain in the body these words: " Secured by mortgage on real and personal estate against loss on my bond as tax collector." These notes were transferred to the complainants by endorsement, who filed their bill in chancery to subject the mortgaged property to their payment.

The answer of McGinty and wife set up three several grounds of defense. First, that at the date of the mortgage, Mary L. McGinty was the wife of her co-defendant, Robert F. McGinty. Second, that the notes of McGinty to Holmes and Pintard were not signed and executed by the said Mary L., and are not mentioned and described in the mortgage. Third, that the $6,000 advanced by Holmes and Pintard was borrowed, one-half by each of them, and that neither of them have repaid the money, but that judgments have been recovered by the respective lenders, against each of them, which have never been collected, and, therefore, they have sustained no damage on account of their suretyship.

The case was submitted to the chancellor on the bill, answer and exhibits, who dismissed the bill. The questions are whether either or all the points of defense are well taken. The terms of the mortgage are, that McGinty " is desirous to secure, save harmless, and indemnify his sureties, and each of them, from all loss, damage, injury, or moneys by them, or either of them, sustained, received, or paid, or that may hereafter be sustained," etc., etc. In the con-

ditional clause of the mortgage occur, among others, these words : " Shall fully satisfy and refund to said sureties, their heirs and assigns, all, and any moneys which they, or either of them, shall or may duly pay out and expend as sureties," etc. It is very clear that the mortgage covers any moneys paid by the sureties or either of them, on account of their undertaking for McGinty. Nor is it denied in the answer that Holmes and Pintard have each furnished McGinty with $3,000 to repair the loss said by him to have been met with at Vicksburg, and that this money enabled him to settle his accounts with the state. It is not perceived how the omission or failure of McGinty's wife to sign the notes in anywise vitiated the transaction. She joined in the mortgage, doubtless, relinquishing her incohate right to dower. The granting part of the conveyance is by the husband alone. "The said Robt. F. McGinty doth bargain, sell, alien, convey,' etc., is its language.

The single object of the mortgage was to indemnify and save harmless the sureties, and each of them. The instant the $6,000 were provided and applied for that purpose, by Holmes and Pintard, McGinty became their debtor, and the mortgage a security therefor. The subsequent execution of the notes was not a satisfaction, nor intended to be (as the words of the notes show), of the mortgage, but became evidence of the amount and reason of the indebtedness. It mattered not what shape the evidence of the indebtedness assumed, so long as it could be traced back to the money paid by Pintard and Holmes for McGinty on account of the taxes, the mortgage still covered and protected it.

In this view of the subject, the notes are the written evidence of the money paid by these sureties, and no more impair their rights under the mortgage, than if the proof of the balance of the money depended on oral evidence, resting in the memory of witnesses, or on the written acknowledgment of McGinty that it had been paid.

McGinty has no concern or interest in the question whether Holmes and Pintard supplied the money from their own purses,

or whether they borrowed it from others; nor whether they have paid it back or not. It is quite certain that the creditors of Pintard and Holmes have no recourse on him in this behalf.

It is not improbable that if McGinty had punctually refunded to these sureties the $6,000, they might have taken up their obligations to their creditors.

It is no legal excuse for McGinty to persist in a failure to comply with his contract with Holmes and Pintard—that they are under obligations· to other persons, which they do not fulfil. McGinty also relies, in his answer on the ground that the transfer of the notes to the complainants was made for the purpose of evading, respectively, the creditors of Holmes and Pintard, and that no value was paid by the assignees.

If the transfer was covinous, for the object of defeating and defrauding creditors, then at the instance and on the objection of creditors, the choses would still be deemed for their benefit the property of Pintard and Holmes, and would be so subjected. That, however, would not absolve McGinty from his duty of paying the debt, but would only direct the payment to another channel.

In this record there is no creditor contesting the fairness of the transfer of the notes. The assignment as between Holmes and Pintard and the complainants was good; no other person except a creditor can impugn it. Moreover, if this question of fraud and transfer without value could be of any avail to McGinty, it is affirmative matter brought forward by him, and which he ought to have proved.

The transfer of the debt here represented by the notes, is an assignment in equity of the mortgage, which follows the debt as an incident, and is a security for whomsoever may be the beneficial owner of it. The complainants are only entitled to the principal debt, and six per cent. interest thereon, from 28th June, 1860, and not the greater rate of interest specified in the notes.

Wherefore, the decree of the chancellor is reversed and

cause remanded, with instructions to the chancery court of Jefferson county to render a decree in accordance with this opinion.