HAWIE *v*. STATE.

. [83 South. 158, In Banc. No. 20880.]

1. CRIMINAL LAW. *Petition. for writ of error coram nobis taken as true on demurrer.*

   A demurrer to a petition for a writ of error *coram nobis* admits all facts well stated or pleaded in the petition.

2. INSANE PERSON. *Common law prevails where insanity is made known at the trial.* .

   There is no statute in this state which lays down the procedure in cases where it is made known to the court that the defendant is insane at the time he is placed upon trial for a felony, but in such case the common law on the subject is clear and must prevail.

3 INSANE PERSONS. *Not to be arraigned for crime.*

   If a man in his sound memory commits a capital offense and before arraignment becomes mad he ought not to be arraigned for it, because he is not able to plead to it with that advice and caution that he ought.

4. INSANE PERSON. *Not to be tried for crime.*

   If after a prisoner has pleaded he becomes mad, he cannot be tried, for he cannot make his defense.

5. SAME.

   If after one charged with a felony has been tried and found guilty, he loses his senses before judgment, judgment should not be pronounced.

6. SAME.

   If after one charged with a felony has been tried, convicted and sentenced, he becomes insane, execution should be stayed.

7. CRIMINAL LAW. *No appeal by one convicted while unknown to be insane.*

   Where an accused was arraigned, tried and convicted while insane, such insanity being unknown to the court he has no remedy by appeal.

8. CRIMINAL LAW. *Writ of coram nobis recognized.*

A writ on the nature of the writ of *coram nobis* has always been recognized 'in this state as a common-law remedy in appropriate cases.

9. CRIMINAL LAW. *Writ of coram nobis.*

A writ in the nature of a writ of *coram nobis* is applicable to criminal as well as civil proceedings. It is founded upon the inherent power of the court over its judgments and proceedings

10. CRIMINAL LAW. *Writ of coram nobis applies to reverse conviction of one insane at trial.*

A circuit court judge has power, after the expiration of a term, to issue the writ of error *coram nobis* to reverse a judgment of conviction in a criminal case, where it appears that the defendant was insane at the time of the trial, and the fact was not made known at the trial, and upon the assignment of such error in fact, if disputed by the state, to cause a jury to be impaneled in term to try such issue; and the venue for the trial of such issue may be changed to another court but the change carries the whole case.

APPEAL from the circuit court of Rankin county.
HON. A. J. McLAURIN, Judge.

George Hawie was convicted of murder and sentenced to death. From an order sustaining a demurrer to a petition for a writ of error *coram nobis,* he appeals.

The facts are fully stated in the opinion of the court.

*L. M. Burch,* for appellant.

Appellant was tried, convicted and sentenced to be hanged, at the January, 1919, of the circuit court of Rankin county, Mississsippi. He was tried on the 24th day of January, of the said term, and on the 25th day of January, the said court finally adjourned.

Between the time of appellant's conviction and the final ajournment  of said court, he was confined within the county jail of Rankin county, without an opportunity to communicate with any one who was interested in him, or who knew of his mental infirmities.

Relatives of the appellant knew nothing of the said trial, until after the adjournment of the court.

On the ——day of June, 1919, in vacation, the appellant filed his application with the trial judge for a writ of error *coram nobis* to issue, because of certain errors of fact, committed at the trial of his case, which said errors of fact, the trial court had no knowledge of at the time of trial. In his said application, the appellant, through his attorney, alleges that at the time of and during the said trial, he was an insane man, to the extent that he was wholly incapable of pleading to the indictment against him, or, of offering any sort of defense, or of making a defense to the said charge; further, that he was, so insane, at the time of the commission of the crime charged, and is still insane.

The said petition also alleges that appellant was deprived of his right of a fair and impartial trial as contemplated by law, because of a violent prejudice, which existed in  the minds of the people of the county in which he was tried;   that by reason of threats of mob violence, directed against the appellant, the attorneys representing him, were deterred and restrained in their efforts to properly present appellant's case to the court and jury; that by reason of the said prejudice, appellant was prevented from presenting a motion to the court for a change of venue to have his case removed from the said county, because the said mob (then and there gathered around the place of his trial), prevented appellant from doing so by threatening to do violence to any one who might make the necessary affidavit, required by law, to accompany the motion for such change; notwithstanding his case had been universally prejudged in the said county, appellant was, for this reason, forced to go to trial in a court where his conviction was a foregone conclusion

Appellant further alleges that the said violent prejudice extended, not only to himself, but to the immediate

members of his family, said family being warned to stay away from the Rankin county court while appellant was being tried, lest the said mob do them violence also, and for this reason none of his said family attended the trial.

And for other causes set forth in his said petition. which said petition is a part of the record before this court on appeal, and to be considered as a whole in passing on the merits of said petition.

Appellant would show that his application for the said writ was set down for hearing at the July, 1919, term, of the said Rankin county court; that when same came on to be heard, the district attorney acting in behalf of the state interposed a demurrer to said petition which is in part as follows: "Said petition affirmatively shows that each and every ground cited therein for a writ *coram nobis* existed at the time of the trial and conviction of the said defendant."

The said demurrer was by the court sustained and the appellant denied a hearing on the merits of his petition or the relief prayed for therein, to which said action on the part of the court, the appellant duly accepted and prosecutes this appeal.

By the interposition of the said demurrer to appellant's petition for the said writ, the state admits each and every allegation contained therein, true as stated, and thereby confess that appellant was in truth and in fact a lunatic at, and during the period of his trial, and wholly incapable of offering any defense he might have had to the crime charged against him; that he, was further incapable of informing his attorneys (who were appointed by the trial court just a few minutes prior to entering upon the trial), of any defense that he might have, because of his said insanity. The question as to whether the appellant was in truth and in fact, so insane, at the time of his trial is, therefore,

not in question here, same having been disposed of by the said demurrer.

The district attorney at the hearing of the said demurrer, relied solely on the case of *Fugate* v. *State,* 85 Miss. 94, as an authority to sustain his position. In the Fugate case this court held that, the writ could not be so comprehensively used as heretofore under the common law, because of various statutory enactments in this state, and said:

"Within this rule must fall the defense of insanity, as well as all other defenses existing at the time of the commission of the crime, within this rule must fall all cases of accident and surprise, of verdicts against evidence, of newly discovered evidence, and all like matters."

Clearly, under this rule, had the appellant based his petition for the said writ on his lack of sanity at the time of the commission of the crime, the sustaining of the demurrer could not have been here complained of. But such is not the case. His petition raises the question of his sanity and his capacity to defend himself in a court of justice, at the time of his arraignment, plea, trial and the rendition of judgment against him.

The rule above quoted from the Fugate case is but an extract or quotation from the case of *Sanders* v. *State,* 85 Ind. 318, 44 Am. Rep. 29. The facts in the Sanders case, are on all fours with the facts of the case at bar. Judge ELLIOTT, in the Indiana case, after having used the exact language quoted above from *Fugate* v. *State, supra,* said, when he undertook to differentiate between the question of the insanity of a defendant at the time of the commission of the crime, and his insanity at the time of the trial and judgment, as grounds for the issuance of the writ *coram nobis:*

"We do not deem it necessary, to discuss the question of the appellant's insanity at the time the plea of

guilty was entered there are cases holding that such cause was sufficient ground for a writ *coram nobis* or a proceeding of like character. *Adler* v. *State,* 35 Ark. 517; *State* v. *Patton,* 10 La. 229; Warton, Cr. Law, 52; 1st Bish. Cr. Law, sec. 396; *McLean* v. *Davis,* 77 Ind. 419. All we deem it necessary to say upon this point is, that if the court below has determined this question before receiving the plea, an appellate court should be slow to interfere, if it should indeed interfere at all, and should only do so upon clear and convincing evidence. The question of the appellant's capacity is however a circumstance of importance to be taken into consideration, in connection with his conduct when the plea was entered, as this was under circumstances threatening great and immediate peril. *Ewell Lead Cos.,* 771.''

A perusal of the Sanders case will show that the trial court, in all probability, knew of Sanders' metal condition, because, as stated by Judge ELLIOTT, the appellate court was reluctant to take this phase of the case from the consideration of the trial court. The appellant in the case at bar, presents an entirely different proposition. It is specificially alleged in his petition for said writ, that appellant's insanity was unknown, either to the court; or to the attorneys who represented him at the trial. In the opinion of Judge ELLIOTT in the Sanders case, he cites with approval a case from his own court, where the writ issued because of a defendant's insanity at the time of judgment. *McLean* v. *Davis, supra.*

After Judge WHITFIELD had adopted the rule of the Sanders case, in his opinion in the *Fugate* v. *State, supra,* as to the defense of insanity at the time of the commission of the crime, when he came to discuss the incapacity of a defendant at the time of trial, said; ''as a striking and conclusive illustration of the necessity that the writ, or some substitute therefor should

exist in criminal practice, we refer to *Calhoun* v. *State* (Kan.), 18 L. R. A. 838; *Sanders* v. *State,* 85 Ind. 318, and especially to the case of *Ex Parte Gray,* 77 Mo. 160. The statute of Missouri provides that where any person under eighteen years of age was convicted of a felony he should be sentenced to inprisonment in the county jail and not the penitentiary. Gray, though under eighteen years of age, when the felony was committed, had been sentenced to the penitentiary at a term of the circuit court, and after the adjournment of the court, he filed his application for this writ to have the judgment set aside; it appearing by satisfactory evidence that the fact was as stated, the judgment was revoked in order that the defendant might be sentenced according to law, this is but one instance illustrative of the necessity of the writ in criminal practice, and a thousand might be conceived.''

As an aditional authority, that the question of the defendant's insanity at the time, of the judgment can be relied on as ground for the writ, after the adjournment of the trial court, we quote from the case of *Sanders* v. *Mitchell,* 61 Miss. 321, wherein Judge COOPER said in part:

''If the bankrupt was a lunatic at the date of adjudication of bankruptcy, the bankrupt court proceeded in error of fact, and the mistake should have been pointed out by writ of error *coram nobis*.''

In R. C. L., 2, page 308, ''also when the accused is insane at the time of conviction, cases holding that he may secure relief by the writ are to be found.'' The text writer of this great legal work, cites as the chief authority for the rule the case of *Sanders* v. *State,* Ind., *supra.*

''R. C. L., 2, page 208, ''as regards the effects of lunacy of the defendant at the time judgment was rendered against him, which fact was not presented to the court, the authorities are in conflict, although both

text writers and courts have asserted that it is ground
for relief by a writt of error, ˌ *coram nobis,* (citing)
*Allison* v. *Tayler,* 6 Dana (Ky) 87; 32 Am. 68;
*Leach* v. *Marsh,* 47 Me. 548; 74 Am. Dec. 503.''

This court clearly adopted the rule that incapacity
of a defendant at the time of the trial and judgment is
ground for the writ, in both the cases of *Fugate* v.
*State, supra,* and *Sanders* v. *Mitchell, supra.* This is
the law in every state in the union except where the
writ has been disposed of by statutory enactment.

It cannot be successfully argued that because the
appellant could have availed himself of some statutory
remedy prior to the adjournment of the trial court,
that his failure to do so bars him further judicial
relief under the laws of this state, when he was a
lunatic and incapable of knowing of any relief, statutory
or otherwise. This court approved the Sanders case of
Indiana in its opinion in *Fugate* v. *State, supra,* as
well as many other cases where the writ was declared
applicable in states that afforded the same statutory
remedies as are in use in this state, where through no
fault of the defendant the statutory relief was not
availed of. This court declared the case of *Sanders*
v. *State, supra,* to be, by far, the most luminous and
lucid case on the subject to be found at all. In that
case it was held that the common law should, in such
cases be used in aid of, and in futherance of, the
statutory law, where a defendant could not and did not
avail himself of statutory remedies.

The blood-thristy American Aborigine would sever the
cords and release his victim from the stake when the
subject manifested signs of mental incapacity. No
Government, historic or prehistoric, has failed to pro-
vide in its laws a sufficient protection for those, whom
an Eternal God had visted with this affliction. It cannot
therefore, be said, that in this present day of enlight-
enment and advanced civilization, when the laws that

govern mankind have been adjusted to a marked state of perfection, and afford more protection now to life, liberty and property than ever before, that, because some technical rule of law has not been complied with by a defendant who is mentally incapable of knowing any rule, or any law of man or God, has for such a breach forfeited his life. Such is not the law in this state, nor, has it ever been the law, or will it ever be the law. An incompetent litigant has never been called upon in the courts of this state to put his life or his property at hazard, save when his committee stood in his stead, armed with all the law and facts, pertinent to the lunatic's case. This is the only way justice can be meted to the insane, for what Judge, or what court, can administer even-handed justice to litigants when one side of the case is locked in the brain of a madman.

The English common law has been solemnly adopted in the state of Mississippi, and is being daily used in every court of the great commonwealth, as a means of aiding, and supplying the defects of our statutory laws, in dealing with life, liberty and property, hence, the writ of error *coram nobis,* or *vobis,* is just as much a part of the rules of procedure, in this state (in a proper case) as any known statutory procedure. The appellant should not be denied relief thereunder, when it is so clearly shown that his failure to avail himself of statutory remedies was no fault of his, but to be attributed to his mental infirmities. *Halford* v. *Alexander,* 12 Ala. 280, 46 Am. Dec. 253; 2 R. C. L., pages 305, 306, 308; *Allison* v. *Taylor,* 6 Dana (Ky.) 87, 32 Am. Dec. *Sanders* v. *Mitchell,* 61 Miss. 321; *State* v. *Calhoun* (Kan.), 18 L. R. A. 838; *Sanders* v. *State,* 85 Ind. 318, 44 Am. Rep. 29; *Leach* v. *March,* 47 Me. 548, 74 Am. Dec. 503.

The facts set forth in appellant's petition for the writ *coram nobis,* and admitted by the state by the

interposing of its demurrer, shows that at the time of appellant's trial he was prevented from securing a change of venue from Rankin county, where his case had been generally prejudged, through fraud practiced upon him by a mob of lawless men. That his attorneys were determined in their efforts to defend him, through threats and menace of the same mob; his immediate family kept away from the trial of appellant because of the threats made against them, by this mob, and from going to the court during the progress of the trial and informing it of the mental condition of the appellant.

In *Fugate* v. *State, supra,* this court said that the cases of *Calhoun* v. *State, supra,* and *Sanders* v. *State, supra,* were striking and conclusive illustrations of the necessity of the writ, in criminal practice, or some such procedure, and that a thousand might be conceived. In both the Calhoun and the Sanders cases the writ issued because of the threats of mob violence and because the defendants and their attorneys were prevented from making a proper defense for defendants.

The allegations in appellant's petition for the writ reveals a condition surrounding his so-called trial identical with the conditions surroundings the defendants in the Calhoun and Sanders cases, at the time of the trial, yet, the appellant was denied, not only the relief prayed for in his petition, but was not even given a hearing on the merits thereof.

Appellant most respectfully urges the court to pass directly upon the proposition, as to the application of the writ of error *coram nobis,* on the ground of the defendant's lunancy, at the time of trial and judgment, in contradistinction to the proposition of the insanity of a defendant at the time of the commission of the crime. In doing so the court will give the Bench and Bar of this state the correct application of the principles set forth in the *Fugate Case, supra.*

Appellant prays that the court reverse and remand this cause to the circuit court of Rankin county, with instruction that his petition be heard on its merits and that the writ of *coram nobis* issue.

*R. M. Bourdeaux,* assistant attorney-general, for the state.

The writ or error *coram nobis* has been in such a state of "innocuous desuetude" that its proper use and scope is involved in obscurity and doubt. Realizing this. Chief Justice WHITFIELD, in the case of *Fugate* v. *State,* 85 Miss. 94, rendered an illumining opinion after an exhaustive investigation. This decision of Chief Justice WHITFIELD, is not only the leading authority in Mississippi, but it has been widely quoted and generally cited throughout the country.

In the *Fugate Case,* Judge WHITFIELD, decides, as *dictum,* that the defense of insanity cannot be made the ground of an application for a writ of error *coram nobis.* Counsel for appellant recognizes the adverse holding in this case and confesses that if he had merely raised the question of insanity at the time of the commission of the crime, he would have nothing to complain of as error, but counsel seeks to make a distinction in this case between insanity at the time of the commission of the crime and insanity at the time of the trial.

Before further considering the decisions of other jurisdictions, it is well to first have clearly in mind the facts surrounding the trial of this appellant for the purpose of correctly differentiating between the case at bar and the reported decisions. George Howie the appellant here, did not plead guilty. George Howie, the appellant here, had two lawyers to represent him at his trial.

In the same case at bar, the defendant was represented by counsel, and under the advice of his counsel he took the stand in his own behalf and after the regular and orderly introduction of testimony on the part of the state and on the part of the defendant, the jury brought in a verdict of guilty.

The only Mississippi statutes that we have found touching the subject of insane persons charged with crime are as follows:

Section 1285 of Hemingway's Code: "Execution in capital cases—what to be done if convict be insane or pregnant. If the sheriff shall at any time be satisfied that any convict in his custody under sentence of death is insane, or that any female convict under like sentence is pregnant, he shall, with the concurrence of the judge of the circuit court, or of the chancellor or the president of the board of supervisors in the absence of the circuit judge, summon six physicians, if to be had, and if not, other discreet and experienced freeholders and electors of said county, to make up an inquest to inquire into such insanity or pregnancy, as the case may be. The sheriff shall summon and swear all necessary witnesses, and the jury and sheriff, after full examination, shall certify, under their hands, what the truth may be in relation to the alleged insanity or pregnancy. And in case such convict shall be found insane or pregnant, the sheriff shall immediately transmit the verdict of the jury to the governor, and suspend the execution of the sentence until the governor shall be satisfied of the sanity of the convict, or that the convict is not or is no longer pregnant, when he shall order, by his warrant to the sheriff, the execution of the convict, on a day to be therein appointed by the governor, according to the sentence and judgment of the court."

Section 1300 of Hemingway's Code: "Conservators of peace. Charged with the commission of an offense, and, in the course of the investigation, it shall appear

that the prisoner was insane when the offense was committed, and still is insane he shall not be discharged, but the conservators of the peace shall remand the prisoner to custody, and forthwith report the case to the chancellor or clerk of the chancery court, whose duty it shall be to proceed with the case according to the law relating to persons of unsound mind."

Section 1301 of Hemingway's Code: "When grand jury do not indict because of insanity, what shall be done. When any person is held in prison or on bail charged with an offense, and the grand jury shall not find a true bill by reason of the insanity of the accused, the grand jury shall certify the fact to the circuit court, and state whether such insane person be in such condition as to endanger the security of persons or property and the peace and safety of the community. And if the grand jury report such unsoundness of mind and such danger, the court shall forthwith give notice of the case to the chancellor or clerk of the chancery court, whose duty it shall be to proceed with such person and his estate according to the law relating to persons of unsound mind."

Section 1302, of Hemingway's Code: "When acquitted because of insanity. "When any person shall be indicted for an offense, and acquitted on the ground of insanity, the jury rendering the verdict shall state therein such ground, and whether the accused has since been restored to his reason, and whether he be dangerous to the community; and if the jury certify that such person is still insane and dangerous, the judge shall order him to be conveyed to and confined in one of the state asylums for the insane."

Coming now to the consideration of the decisions of other jurisdictions the statement of Chief Justice MARSHALL that no decision is a positive authority in any case except co-extensive with the facts of the case in which the decision was rendered is pertinent

14—121 Miss.

and with this in mind, we shall now proceed to set out some of the leading cases on the use of the writ of error *coram nobis*.

*Sanders* v. *State,* 85 Ind. 318, 44 Am. Rep. 29, is one of the leading cases and is relied on by counsel for appellant in the case at bar. Counsel for appellant evidently misconceived the grounds of granting the writ of error *coram nobis* in the Sanders case. The decision in that case, in our opinions, was predicated solely and exclusively upon the ground of duress which was tantamount to fraud. The defendant in that case had by intimidation been coerced into withdrawing a plea of not guilty and entering a plea of guilty. The court held that the circumstances under which the plea of guilty was entered were such as to render the plea an absolute nullity, and it was undoubtedly the Sanders case that Judge WHITFIELD followed when he announced that insanity was not a ground for the writ of error *coram nobis*.

In the case of *State of Kansas* v. *Robert Calhoun,* 18 L. R. A. 838, is another leading case, and like the *Sanders case, supra,* the granting of the writ of error *coram nobis* was solely on the ground that the plea of guilty had been entered under duress.

The case of *Adler* v. *The State,* 35 Ark. 518, is the only case that we have been able to find that sustains the contention of counsel for appellant and in this case the supreme court of Arkansas held that a circuit judge has power after the expiration of a term to issue the writ of error *coram nobis* to reverse a judgment of conviction in a criminal case where it appears that the defendant was insane at the time of the trial and the fact was not make known at the trial.

We find numerous decisions in which there are, of course, great contrariety of opinion involving the proper use of the writ of error *coram nobis* in civil

cases, but we do not think that any of these decisions throw light on the case at bar.

It is generally stated that there are two lines of decisions, one holding that insanity is a ground for the issuance of the writ of error *coram nobis* and the other line of decisions the Sanders case and the Fugate case, for instance, holding that the defense of insanity is not a proper ground.

Now we submit that if this court follows the *dicta* of the Fugate case and the Adler case, the learned circuit judge was correct in sustaining a demurrer to the petition for a writ of error *coram nobis.* In order to escape the conclusion announced by Judge Whitfield in the Fugate case in respect to insanity, counsel for appellant argues that he not only alleges insanity at the time of the commission of the crime, but that he also alleges insanity at the time of the trial, and sentence and also alleges duress induced by threats of mob violence.

If it be held that insanity at the time of the commission of a crime is not a proper ground for the issuance of the writ of error *coram nobis,* we take it that it makes absolutely no difference why the defense of insanity was not interposed at the trial, whether from neglect or indifference, or lack of knowledge on the part of counsel, or from duress induced by threats of mob violence, or from the fact of insanity itself at the time of the trial. The law as announced in the Fugate case is this, where insanity is not interposed as defense in a criminal prosecution, a writ of error *coram nobis* will not lie in order to annul the judgment of conviction and order a new trial under the indictment that the defense of insanity might be interposed in such new trial.

In cases other than the one at bar, there might be some merit in drawing a distinction between insanity at the time of the commission of the crime and in-

sanity at the time of trial and conviction; in cases other than the one at bar there might be some merit in allegations of duress induced by threats of mob violence, but in the case at bar it can make no difference whatever because, taking the allegations of appellant's petition as being true, all that he has been deprived of is the benefit of his plea of insanity, at the time of the commission of the crime as a defense to the charge.

If appellant's attorneys in the trial court had not been intimidated and if they had asked for and procured a change of venue to another county the only defense under the record in this case that appellant could have interposed in the trial in such other county was his insanity at the time of the commission of the crime.

In other words if this case is reversed, the effect of it would be merely to let the appellant plead insanity at the time of the commission of the crime as a defense to the prosecution, which Judge WHITFIELD says in his *dictum* in the Fugate case cannot be done.

This is not a case where a plea of guilty has been extorted from the appellant.

This is not a case where, because of duress induced by threats of mob violence or because of insanity at the time of the trial, appellant was deprived of the right of interposing defense other than insanity to this prosecution, such as self defense, justification, proving an alibi, etc., etc.

We repeat that if insanity at the time of the commission of the crime is not proper ground for the suing out of a writ of error *coram nobis*, that it can make no difference why the defense was not interposed at the first trial and that in the last analysis this is merely a proceeding to permit the appellant to interpose the defense of insanity and that if the writ of error *coram nobis* is ordered issued and the former

judgment of conviction annulled, the only possible defense that the appellant can interpose at the second trial will be his insanity at the time of the commission of the offense.

Adler v. The State, 35 Ark. 517, is, in our opinion, authority for the reversal of this case, but if this court follows the dicta of the Fugate case and the Sanders case, we submit that the judgment of the circuit court sustaining the state's demurrer to this petition should be affirmed.

We do not think that the attorneys for this appellant, in the court below, are subject to any adverse criticism. We think that the statement of the accused himself convicts him of murder and it certainly was not within their province to suggest a defense.

The possibilities in this case present a rather interesting query; If the former judgment of conviction should be annulled, could the appellant in a subsequent trial claim that he was sane and plead former jeopardy in bar of the second prosecution.

Stevens, J., delivered the opinion of the court.

Appellant was indicted by the circuit court of Rankin county for the murder of Annie Bell Seaney, and at the January, 1919, term was tried, convicted, and sentenced to death. After the adjournment of the court, and in June, 1919, appellant filed an application with the trial judge for a writ of error coram nobis, based on certain alleged errors of fact in the trial of said cause. The petition is lengthy, and contains many averments, which, for the purposes of this opinion, need not here be set forth. The main errors of fact relied upon are the averments that appellant was insane at the time he was placed upon trial and convicted, and still is insane, and because of his mental incapacity was unable to advise with counsel or make his defense;

that appellant was financially unable to employ counsel, and on that account the court appointed two attorneys to represent him, but that these attorneys were not appointed until the day of the trial, and had no knowledge of appellant's insanity, and no means of knowing that petitioner was unable to conduct his own defense; that the attorneys appointed by the court had only a short conference with petitioner before the petitioner was· placed upon trial, and because of petitioner's insanity he was incapable of informing said attorneys of his defense of insanity or of suggesting or advising with the said attorneys on any material matter pertaining to his defense; that the relatives or family of petitioner were not present at the trial, and knew nothing of the action of the court in appointing attorneys to represent defendant, and did not know who the said attorneys were. until after the said trial and conviction, and for that reason were unable to communicate with or advise said attorneys or the court of said insanity. It is further averred that petitioner was insane at the time of the homicide. It is alleged that the attorneys who now represent petitioner are in possession of facts and circumstances which they have learned since the trial, and of which the court had no knowledge at the time of petitioner's trial, and are now prepared to show that at the time of the trial petitioner was insane, and to furnish the court with the facts pertaining to this insanity, facts which, if known, would have prevented petitioner's trial and the judgment that has been pronounced against him.

The petition had lengthy averments to the effect that public sentiment and feeling was so aroused against petitioner and such prejudice existed against petitioner that he was denied that fair and impartial trial contemplated by the Constitution. It is further averred that petitioner was placed upon trial and convicted on the 24th day of January, 1919, and that the court

finally adjourned on the 25th day of January, 1919, in ignorance of the facts set forth in said petition. The prayer of the petition is that the petition should be heard at the next regular term of the court, and upon hearing the judgment of conviction heretofore entered be revoked and annulled and a new trial awarded, or such further disposition made of petitioner as may conform to law. The petition has attached thereto the affidavit of L. M. Burch, as attorney for petitioner, that the facts set forth in the petition are true and correct to his best information, knowledge, and belief. To the petition as presented the following demurrer was interposed:

"Comes the state by W. C. Eastland, district attorney, and demurs to the defendant's petition for a writ of error *coram nobis,* for the following reasons, to wit:

"(1) Said petition affirmatively shows that each and every ground cited therein for the writ of error *coram nobis* existed at the time of the trial and conviction of the said defendant.

"(2) Other grounds to be shown on the hearing.

W. C. EASTLAND, District Attorney."

This demurrer was by the court sustained, and from this action of the court appellant appeals.

By elementary rules of pleading the demurrer in this case admits all facts well stated or pleaded in the petition. In Ency. of Pleading & Practice, vol. 5, p. 36, in the chapter on *Coram Nobis,* it is stated:

"The fact alleged as error may be admitted by demurrer or plea of *nullo est erratum,* which amounts to the same thing, or by motion to dismiss. . . . No plea is necessary unless some error in matter of fact has been alleged upon which the defendant can make up an issue of fact if he is disposed so to do. . . . Upon the issue of alleged error a trial is had."

The petition in this case clearly avers that George Howie was insane at the time he was placed upon

trial, and at the time he was actually tried and con-
victed. This the demurrer admits. Our consideration
of the defendant's rights is, therefore, based upon the
assumed fact that he was insane at the time he was
tried, and his life forfeited by the final judgment of
the Rankin county circuit court. The sole question
presented is one of law. Does the petition state a
case for relief?

There can be little controversy about the *status* of
an insane person charged with crime. By section 1538,
Code of 1906 (section 1300, Hemingway's Code), it is
made the duty of a conservator of the peace to hold a
prisoner who appears to have been insane when he
committed the offense, and is still insane at the time
of the hearing, and to report the case to the chan-
cellor or clerk of the chancery court for the proper
inquiry. By section 1539, Code of 1906 (section 1301,
Hemingway's Code), it is made the duty of the grand
jury who fails to return an indictment because of in-
sanity to certify the fact to the circuit court, and there-
upon the circuit court shall give like notice to the
chancellor or clerk of the chancery court. By section
1540, Code of 1906 (section 1302, Hemingway's Code),
provision is made for those cases in which the accused
is acquitted on the ground of insanity. But we have no
statute which lays down the procedure in case where it
is made known to the court that the defendant is insane
at the time he is placed upon trial for a felony. But the
common law on the subject is clear and must prevail.
Blackstone observes:

"If a man in his sound memory commits a capital
offense, and, before arraignment for it, he becomes
mad, he ought not to be arraigned for it, because he is
not able to plead to it with that advice and caution that
he ought. And if, after he has pleaded, the prisoner
becomes mad, he shall not be tried; for how can he
make his defense? If after he be tried and found guilty,

he loses his senses before judgment, judgment shall
not be pronounced, and if, after judgment, he becomes
of nonsane memory, execution shall be stayed; for,
peradventure, says the humanity of the English law, had
the prisoner been of sound memory, he might have
alleged something in stay of judgment or execution.
Indeed, in the bloody reign of Henry VIII, a statute was
made which enacted that if a person, being *compos
mentis*, should commit high treason, and after fall into
madness, he might be tried in his absence, and should
suffer death, as if he were of perfect memory. But
this savage and inhuman law was repealed by the Stat-
ute 1 & 2 Ph. & M. c. 10. For, as is observed by Sir
Edward Coke, 'The execution of an offender is, for ex-
ample, *ut pœna ad paucos, metus ad omnes perveniat;*
but so it is not when a madman is executed, but should
fibe a miserable spectacle, both against law, and of ex-
treme inhumanity and cruelty, and can be no example to
others.' But if there be any doubt whether the party be
*compos* or not, this shall be tried by a jury.'' Wendell's
Blackstone's Commentaries, vol. 4, pp. 24, and 25.

A leading case is *Freeman* v. *People,* 4 Denio (N. Y.),
9, 47 Am. Dec. 216, in which the Supreme Court of
New York quoted with approval the observations of
Sir WILLIAM BLACKSTONE and Sir EDWARD COKE, and ob-
served further:

"The true reason why an insane person should not
be tried is that he is disabled by an act of God to
make a just defense if he have one. As is said in
4 Harg. Stat. Tr. 205, 'There may be circumstances
lying in his private knowledge, which would prove his
innocency, of which he can have no advantage, be-
cause not known to the persons who shall take upon
them his defense.' The most distinguished writers on
criminal jurisprudence concur in these humane views,
and all agree that no person, in a state of insanity,
should ever be put upon his trial for an alleged crime,

or be made to suffer the judgment of the law. A mad-man cannot make a rational defense, and as to punishment, *furiosus solo furore punitur.* 1 Hale's P. C. 34, 35; 4 Bl. Com. 395, 396; 1 Chit. Cr. L. Ed. 1841, p. 761; 1 Russ on Crimes, Ed. 1845, p. 14; Shelf. on Lunacy, 467, 468; Stock on Non. Comp. 35, 36.''

And, after discussing what disposition the court should make of the defendant whose sanity is brought into question at the time of trial, further stated in the opinion:

''The course at common law was much the same. In *Frith's Case,* 22 How. St. Tr. 307, 318, which preceded the act of 39 and 40 George III, to which reference has been made, the prisoner was arraigned for high trea-son, and a jury sworn to inquire whether he was of sound mind and understanding or not. Lord Kenyon, Chief Justice of the Court of King's Bench, presided at the trial, assisted by one of the judges of the court of common pleas and one of the barons of the court of exchequer. It was observed by the court to the jury that the inquiry was not whether the prisoner was insane when the alleged crime was committed, nor was it necessary to inquire at all what effect his present state of mind might have [been] when that question came to be discussed; but the humanity of the law of England had prescribed that no man should be called upon to make his defense, at a time when his mind was in such a situation that he appeared in-capable of doing so; that however guilty he might be, the trial must be postponed to a time when, by collecting together his intellects, and having them entire, he should be able so to model his defense, if he had one, as to ward off the punishment of the law; and it was for the jury to determine whether the prisoner was then in that state of mind. Shelf. 468.''

In *Jones* v. *State,* 13 Ala. 153, the court by CHILTON, J., observed:

"The evidence strongly indicated, perhaps was conclusive, of the prisoner's insanity at the time of the trial. Under such circumstances, it was not proper that he should have been put upon his trial. By the humanity of the common law, a party who was insane at the time of the trial could not be arraigned. If he became insane after his conviction, he could not be executed while he remained thus demented. See 1 Hawk. P. C. 3, section 3; 1 Hale, 34, 35; 1 Russ. 13; 4 Bl. Com. 25."

To the same effect is *Baughn* v. *State,* 100 Ga. 554, 28 S. E. 68, 38 L. R. A. 577, and other cases referred to in the attached case note.

Mr. Bishop says: "If an indicted person is not sane, the court cannot go on with the case; or if he becomes insane after the trial commences, he can neither be sentenced, or, if sentenced, puished, while his insanity continues." Bishop's New Criminal Law, vol. 1, par. 396.

From these authorities it unquestionably follows that if the defendant in this case was insane, the court was in error in placing him upon trial and in pronouncing the judgment of conviction. The fact of the prisoner's insanity was not known either by court or counsel. There was an error of fact which led to an unlawful trial. It must be remembered that we are not here dealing with any alleged errors in reference to the indictment, arraignment, or the actual conduct of the trial itself. The rulings of the trial court on the merits of the case are not presented. We are confronted with an error of fact which was unknown to the court and one which, if the court had known, would have prevented any trial whatever. What then is the prisoner's remedy? The error is one that could not have been availed of during the term of court at which the

defendant was convicted. There is, therefore, no remedy by appeal. Does the fact that the term of court has elapsed or adjourned preclude any further inquiry or deny any relief? No statute of our state affords relief in the case made by the petitioner. The remedy, if there be one, must be found in the common law. The petition prays for a writ *coram nobis.* The office and functions of a writ in the nature of the writ *coram nobis* have been clearly and well stated in previous decisions of our court. It is not, therefore, the purpose of this opinion to trace the history or justify the use of such writ in our commonwealth. It is sufficient to say that a writ in the nature of the writ *coram nobis* has always been recognized in our state as a common-law remedy in appropriate cases. *Keller* v. *Scott,* 2 Smedes & M. 81; *Fellows* v. *Griffin,* 9 Smedes & M. 362; *Land* v. *Williams,* 12 Smedes & M. 362, 51 Am. Dec. 117; *James* v. *Williams,* 44 Miss. 47; *Fugate* v. *State,* 85 Miss. 94, 37 So. 554, 107 Am. St. Rep. 268, 3 Ann. Cas. 326; *Corby* v *Buddendorff,* 98 Miss. 98, 54 So. 84; *Miss. & Tenn. Railway Co.* v. *Wynne,* 42 Miss. 315. Under these authorities it is clear that the writ is an available common-law remedy in both civil and criminal cases. It only remains to inquire whether the remedy is available to appellant in the case at bar. On the admitted facts there can be no doubt on this point. Indeed insanity at the time of trial or judgment presents a case which the writers have used as illustrating a proper case for the writ *coram nobis.* Mr. FREEMAN says:

"If, however, the proceedings are based upon facts presumed by the court to exist, as when one of the parties is insane, or is an infant, or a *feme covert,* or has died before verdict, and the court supposing such party to be alive and competent to appear as a litigant, renders judgment, it may be set aside by a writ of

*coram nobis.''* Freeman on Judgments (2 Ed.), par. 94.

The functions of the writ were ably discussed by Chief Justice WHITFIELD in *Fugate* v. *State, supra,* and certain limitations upon the use of the writ in our state indicated, but the court was explicit in stating: "It is perfectly clear, we think, on the authorities, that the writ is applicable to criminal as well as civil proceedings."

Its application to criminal cases is likewise ably discussed in *Sanders* v. *State,* 85 Ind. 318, 44 Am. Rep. 29. Justification for the writ is properly founded upon the inherent power of the court over its judgments and proceedings. The opinion of the Indiana court on page 328 of 85 Ind. (44 Am. Rep. 29), contains the following observations that are apposite:

"That courts possess inherent powers not derived from any statute is undeniably true. Among these powers are the right to correct their records so as to make them speak the truth, to pass upon the constitutionality of statutes, to prevent the abuse of their authority or process, and to enforce obedience to their mandates. If it were granted that courts possess only such rights and powers as are conferred by statute, they would be mere creatures of the legislature, and not independent departments of the government. They are not mere creatures of the legislature, but are coordinate branches of the government, and in their sphere not subject to legislative control. *Deutschman* v. *Town of Charlestown,* 40 Ind. 449; Cooley, Const. Lim. 114, 116; 2 Story, Const. 377.''

In Cyc. vol. 23, p. 885, is is said: "But the writ may issue where there is a vital jurisdictional defect not apparent on the face of the record, or on account of the death of a party before judgment, or the infancy, insanity, or coverture of defendant, such disability not having been brought to the notice of the court before

judgment, or where a default has been irregularly entered against a party not legally in default, or has been taken against him by fraud, accident, or mistake, without fault on his part.''

The case of *Adler* v. *State,* 35 Ark. 517, 37 Am. Rep. 48, is directly in point, especially upon the proposition of the insanity of the accused at the time of the trial, paragraph 1 of the headnotes reading:

''A circuit court judge has power, after the expiration of a term, to issue the writ of error *coram nobis* to reverse a judgment of conviction in a criminal case, where it appears that the defendant was insane at the time of the trial, and the fact was not made known at the trial; and upon the assignment of such error in fact, if disputed by the state, to cause a jury to be impaneled in term to try such issue; and the venue for the trial of such issue may be changed to another county, but the change carries the whole case.''

We refer also to *Ex parte Gray,* 77 Mo. 160; *State* v. *Patton,* 10 La. Ann. 299, 63 Am. Dec. 594; *State* v. *Calhoun,* 50 Kan. 523, 32 Pac. 38, 18 L. R. A. 838, 34 Am. St. Rep. 141; 2 R. C. L. 308, and authorities cited in footnotes.

It will be observed in the present case that appellant's mental condition was in no way brought into question during the progress of his trial, and especially was there no plea of insanity interposed.

There is a decided difference between insanity at the time of the commission of the crime and insanity at the time of trial. From the admitted facts and the authorities referred to, the trial court was in error in sustaining the demurrer to appellant's petition. In the language of Sir Edward Coke, the execution of a madman would be a ''miserable spectacle, both against law and of extreme inhumanity and cruelty, and can be no example to others.''

The judgment of the learned circuit court will be reversed, the demurrer to the petition in this case overruled, and the cause remanded for further and appropriate proceedings.

*Reversed and remanded.*

ETHRIDGE, J. (dissenting).

I am unable to concur in the opinion of the majority. In the first place, section 32, Code of 1906 (section 7, Hemingway's Code), expressly abolishes writs of error, and as a writ of error *coram nobis* is a writ of error, being a particular writ embraced in the general class of writs, it was intended to be abolished by the legislature, and therefore all cases antedating this change in our law have no bearing on the present suit. In the recent cases, embracing all cases arising since this change in the statute, no reference to the statute was made, either in the briefs of counsel or in the opinion of the court, and it is manifest that the court did not intend to limit this statute to a particular class of writs of error. None of the reported cases arising since said change in the statute has allowed the writ. It has been universally refused, and, while the court in the *Fugate Case,* 85 Miss. 86, 37 So. 554, 107 Am. St. Rep. 268, 3 Ann. Cas. 326, stated that the writ existed, it is clear the statute was not called to the court's attention, and at most the opinion is *obiter dictum* on this point. However, I think, independent of whether the writ still exists or not, that no sufficient showing was made in the present case for the issuance of such writ. The petition is filed in the name of George Howie by his attorney, and begins, "Your petitioner would show," etc., setting out that he was insane and incapable of in any way advising his attorneys who represented him at the trial, who were appointed by the court to defend him; that he was insane, or that the plea of insanity was the defense, and

that because of his insanity that petitioner was not in such position to offer such plea for himself; that the attorneys (naming two attorneys) were appointed to defend him, and had no knowledge of his insanity, and therefore were unable to present a plea of insanity, and that they knew nothing of the facts, and that they took him into a side room, and after a short conference, without conferring with any one save the petitioner, entered upon trial of petitioner. It also undertakes to allege certain facts showing intimidation and coercion to prevent motion for a change of venue. The affidavit to this petition is not made by the attorneys who represented the petitioner at the trial, but by other counsel appearing for the first time since the trial, and this affidavit is not made on the personal knowledge of the attorney, but is made by the attorneys for the client on information and belief. The affidavit in full being as follows:.

"This day came and personally appeared before me the undersigned officer of the law, in and for the said state and county, L. M. Burch, attorney of record for the petitioner, George Howie, and says that he appears in the stead of the petitioner because the petitioner is insane and incapable of making this affidavit to his petition for a writ of error *coram nobis,* who, after being first duly sworn by me, states upon oath that the facts set forth in the said petition and the affirmative allegations therein are true and correct as to his best information, knowledge, and belief."

There is no supporting affidavit by the attorneys who defended him, nor by the officers having the petitioner in custody, nor is there any expert testimony, nor indeed any testimony of any kind other than this affidavit, and no writ of lunacy or other proceeding showing or tending to show that petitioner is in fact insane. The attorney filing the present petition does not show that he has personally made an examination of the mental

status of the accused, nor is the application fortified by any kind of support or evidence.

It is true that the district attorney in his demurrer challenged the sufficiency of the petition on the ground that the petition shows affirmatively that each and every ground cited therein for the writ of error *coram nobis* existed at the time of the trial and conviction of the defendant, and on other grounds to be shown at the hearing. Under this demurrer, in my opinion, the sufficiency of the petition is challenged, and if it be necessary to support a petition with some preliminary proof or affidavit to show the trial judge that the granting of the writ would properly be warranted, then the petition is not sufficient to warrant the issuance of the writ.

It seems to me that the essence of the writ is very analogous to a motion for a new trial based on newly discovered evidence. Or it is analogous to a proceeding in equity to enjoin a judgment at law or to grant a new trial at law for similar defects existing at the time of the rendition of the judgment, which facts, if established at the time of the trial, would have resulted in all probability in a different judgment being rendered. If the facts now set forth had been discovered before the adjournment of court, manifestly the motion for a new trial would have been the proper remedy, and certainly under the rules applicable to that subject a greater showing would have been required than is contained in the present petition. In other words, in the present case the judge is asked and required by the majority opinion to grant a stay of execution and a hearing on the application on the unsupported statements of the petitioner and the belief of his attorney; said belief of the attorney being based entirely upon the statements of the petitioner.

We must remember that the trial judge, the officers of the court, including the attorneys for the petitioner,

15—121 Miss.

as well. as the general public, had the petitioner before
them during the trial, where his appearance, conduct,
and general demeanor were under observation by the
judge, district attorney, attorneys for the defendant,
the juries, and the general public, and that this was
followed by a verdict of guilty.   We have before
us also the record of proceedings at the trial which
were necessarily before the trial judge, and we are
authorized to presume, and required to presume, in
favor of the validity of the solemn judgment of the
circuit court, facts which reasonably could appear
to the said judge.

It appears from the record of that case that the
petitioner testified in his own behalf, giving a full ac-
count of his version of the facts leading up to and
at the time of the alleged crime, and it seems to me
it would certainly appear from his testimony and
conduct and demeanor if he was insane that there was
something that would indicate it, but, reading the rec-
ord in the light of the trial and conviction, it is
impossible to find anything to suggest the insanity
of the petitioner.

It was certainly the duty of the attorneys repre-
senting him at that time to confer with him and to
use such other available information, as was obtain-
able before going into trial, and, if there was any
truth in the allegations of the present petition, they
would be the best witnesses by whom to establish
those facts, and that the application ought to be
fortified by the evidence of some persons other than
the petitioner, and especially of his attorneys who
represented him through the trial, and who would
have every opportunity of knowing the facts.   If a
man sentenced to death for murder or other capital
offense can postpone the execution of such sentence
by a mere ex parte affidavit, unfortified by any other
affidavit, it would be a vain and useless thing to sen-

.tence men to die, for what man facing such a dreadful alternative would not file a petition, supported by his own affidavit, to procure a new lease on life and a postponement of the inevitable hour? If the application can be granted now on this showing, and if the circuit judge must try the fact as to the said insanity now alleged to exist, and if an appeal from that judgment may be prosecuted here, what would hinder the filing of a new application on the ground of subsequent insanity to prevent execution after such proceeding? In other words, we would be faced with an endless chain of writs *coram nobis* until the prisoner died a natural death, or until some judge decided the case favorably to him.

I think that a proceeding of this kind requires a strong showing before the writ may issue at all. Ordinarily a judgment cannot be averred against. It usually imports absolute verity as between the parties to it, and before it is set aside or suspended the strongest possible showing should be made on the justness of the proceeding to invalidate or postpone it.

I think my position is supported by the decision of this court in *Holt* v. *State*, 78 Miss. 631, 29 So. 527. In that case Holt was convicted of murder, and the death penalty had been pronounced. The court had adjourned, and application was presented to the circuit judge in vacation for a writ of error *coram nobis* on the ground that some of the jurors were not qualified electors, and on the ground that it had been communicated to the jury before the trial of petitioner that the petitioner had previously killed two men and shot a third before the homicide for which he was tried, which statements were untrue and to his prejudice, depriving him of a fair trial; and because a state's witness had stated to divers persons before the trial that he was not present and knew nothing about the killing, and but for the testimony of this

witness there would have been no conviction; that he had used due care and diligence and did not know any of these things until after the court which tried him had adjourned. The judge below declined to issue the writ, and the court, in affirming the action of the judge, called attention to the fact that the petition was supported by no evidence except that of the petitioner himself; that neither the .witnesses nor their affidavits are produced, and declined to decide whether the writ would lie in a criminal case, and whether the case was appealable or not because of the insufficiency of the petition.

The rule as to what is required on a motion for a new trial on the ground of newly discovered evidence or absent witnesses is laid down in *Lamar* v. *State,* 63 Miss. 265, and approved in *Lea* v. *State,* 64 Miss. 295, 1 So. 244; *Hill* v. *State,* 72 Miss. 531, 17 So, 375; *Borroum* v. *State,* 22 So. 68; *Donald* v. *State,* 41 So. 4—in which it is announced that to entitle the defendant to a continuance because of the absence of a witness, or on the motion for a new trial, he must show that he used all diligence, and show what steps had been taken to secure the attendance of a witness and produce the witness or his affidavit on the hearing of the motion for a new trial. Also *Hare* v. *Sproul,* 2 How. 772; *Rulon* v. *Lintol's Heirs,* 2 How. 891; *Garnett* v. *Kirkman,* 44 Miss. 94; *Bledsoe* v. *Little,* 4 How. 13; *Wright* v. *Alevander,* 11 Smedes & M. 411; *Dean* v. *Young,* 13 Smedes & M. 118.

As to a showing for a new trial in chancery or relief against judgment: *Buckingham* v. *Wessen,* 54 Miss. 526; *Miller* v. *Palmer,* 55 Miss. 323; *Ross* v. *Holloway,* 60 Miss. 553; *Cotton* v. *Hiller,* 52 Miss. 7; *Stewart* v. *Brooks,* 62 Miss. 492; *Greene* v. *Bank,* 73 Miss. 542, 19 So. 350.

In the *Fugate Case,* 85 Miss. 94, 37 So. 554, 107 Am. St. Rep. 268, 3 Ann. Cas. 436, the petition alleged

that three of the jurors who tried him had formed
and expressed an opinion as to the guilt of the defend-
ant prior to their having been accepted as jurors, and
that this was unknown to the petitioner or his counsel
until after court had adjourned.    The application
set out the statement of the jurors and what they
testified to on their *voir dire* that they had not
formed or expressed an opinion, and affidavits were
filed with the petition sustaining the allegations as to
what these jurors had stated, the petition averring that
neither the appellant nor either of his attorneys knew
that said jurors had expressed said opinion until after
the adjournment of court, and that they had exercised
all due diligence to ascertain the character of the
jurors, and could not discover the facts set forth
until after the adjournment of the court.    The court
held the showing was insufficient, and that the trial
judge properly denied the writ.

It is difficult for me to see why the writ should
not issue in the Fugate Case, if the writ would lie,
as well as in the present case.    If the jurors were
hostile to the defendant and concealed their hostility
by false statements on their examination for jury
service, it would seem that defendant had not had
constitutionally a fair trial.    There are methods by
which insanity may be established provided by statute,
and before the solemn judgment of conviction is sus-
pended or set aside some preliminary proceeding to
establish insanity should have preceded the filing of
this petition, and at all events, if not filed before,
satisfactory sustaining evidence should accompany the
petition.

Section 3219, Code of 1906 (section 5561, Heming-
way's Code), provided that the chancery court has
jurisdiction of writs of lunacy, and provides a proceed-
ing to determine whether or not a person is a lunatic.

If the petitioner was in fact insane, a verdict under this statute, in my opinion, should accompany the application whenever it may be filed to annul or suspend the judgment. It it well settled in this state that the chancery court has jurisdiction to grant new trials at law in proper cases, and that in order to avail of this jurisdiction there must be a clear showing made.

For the foregoing reasons, I think the judgment of the circuit judge in denying the application and dismissing the petition should be affirmed.