PATTERSON, Justice:
J. M. Conn, Jr. was indicted and tried in the Circuit Court of Winston County for the murder of his wife. He was found guilty of manslaughter and sentenced to serve twenty years in the state penitentiary. From this sentence he appeals.
A summary of the facts, not contradicted in essential detail, is that on the evening of May 8, 1969, the appellant shot and killed Gloria Russell Conn, his wife, and one Clurry Freshour. Prior to this tragedy the wife of the appellant, accompanied by her four children, had visited in the home of Mrs. O’Neil Freshour some seventeen miles distant from her home. While there, they visited, popped corn and watched a movie on television. At about 9:30 p. m. Mrs. Freshour returned Mrs. Conn and her children to the Conn home. At the request of her husband who was ill, Mrs. Freshour was accompanied on this automobile trip over rural roads by her brother-in-law, Clurry Freshour. They arrived at the Conn home, which was dark, about 10:30 p. m. Mr. Freshour accompanied Mrs. Conn and some of her children, if not all, into the kitchen of the home which was adjacent to the carport. This area was illuminated by the lights from the automobile. Freshour carried with him the popcorn popper and some soiled clothing of the children. Immediately after the lights were turned on in the kitchen, the appellant appeared from the rear of the house with a shotgun, stepped into the kitchen, and without conversation killed his wife and Freshour. Immediately thereafter, he left the kitchen, inquired the identity of Mrs. Freshour, who remained seated in the automobile, and directed her to remain until the sheriff arrived. The oldest daughter of the appellant hastened to the nearby home of her grandparents and summoned the sheriff. During the interval before the sheriff’s arrival the appellant remained under the carport and refused Mrs. Fresh-our entry to the kitchen to ascertain the condition of his victims.
*473 The sheriff arrived thereafter and upon entering the house found the dead bodies of Mrs. Conn and Mr. Freshour, both of whom had been killed by shotgun blasts. His investigation revealed that the appellant’s automobile was parked to the rear of the Conn home where it could not be observed from the driveway to the carport. In response to inquiry as to whether the appellant made any statement, he testified: “Well, the first thing I said was, Junior what in the world have you done done, and he immediately said, well, I caught them together in there and said well, I shot them both.” This statement was later repeated by the appellant in the presence of his attorney after he had been advised of his constitutional privileges.
The appellant’s version of the affair was that he had departed his place of employment in Houston, Texas around noon of May 8, feeling ill from a diabetic condition and overwork, and had driven approximately 550 miles to his home in Winston County without pause other than to refuel his automobile and refresh himself with a soft drink or coffee. He testified that when he reached his destination, none of his family was found to be present. He thereupon drove his automobile to the rear of the house to wash bugs from the windshield. While so engaged, he observed some deer nearby and obtained his gun to shoot them. He followed the deer for a short distance, but failing to obtain a shot, was returning to his house when the following occurred:
A. ... I was down there on the creek which is about — well, it’s better than four hundred feet down there. It’s back of the house. So when I saw their car and their lights drive on up, you know, in the yard then I come on to the house and I walked on in the house and I come up to the back of the house there, well, about the time I got, oh, I was, when I was coming through the carport there, I heard my son in there a crying and I said, my God, he’s got another one of them headaches. He has migrane headaches and I just walked on in there where they was and he was standing there watching them a crying.
Q. Now then, as you walked in around the corner of the carport and toward the kitchen door, how were you walking ?
A. Well, I was just poking along. I wasn’t in no hurry, wasn’t in no hurry. I was just walking normal.
Q. Do you mean you were walking normally ?
A. Yes, sir, just you might say — well, I was give out. I was just poking along, just walking along. I was not leaping like no kangaroo.
Q. All right, now just tell us what happened ?
A. Well, when I walked on in, I walked in the kitchen door, and when I walked in the house, I closed the door behind me. I just had the doorknob, I don’t guess I ever turned the doorknob aloose, and when I walked in through the door and there they stood. Clurry “Bulldog” Freshour hugging and kissing with his hand on my wife’s bottom and I guess then that’s when I — my kids was a screaming and a crying and that’s when they was shot.
Q. Do you remember shooting them, Mr. Conn?
A. No, sir, I did not know when they was shot. I mean I didn’t — well it seemed just like well you’d just walked up to something and your head flopped off. It just burnt you up. It burnt me up instantly.
Q. Do you remember pointing the gun at anyone ?
A. No, sir, if I could remember such as that I wouldn’t have ever pointed no gun at anybody.
The appellant also testified that on two previous occasions he had suffered a men *474 tal lapse or “blank” spells. The first occurrence, at an unspecified time, was recalled as follows: “I was in shock or something and I didn’t know what I was doing and they caught me and put me in the hospital.” The next occasion occurred approximately two months prior to May 8 when the appellant requested a friend to take him home and while enroute, forgot where he lived and was only able to recognize his home by observing his wife and children in the yard. These episodes were evidently related to verify the appellant’s sole defense, a mental “blackout” at the time of the shooting.
The first assignment of error is that the court erred in not granting the appellant a continuance when one of his witnesses, a medical doctor, did not appear to testify though he had been timely subpoenaed. The witness, Dr. James R. Giffin, who had testified with regard to the appellant’s mental condition at a previous trial, advised the attorneys for the defendant the evening before he was to testify the following day that he was ill and would not be able to appear. This information was related to the trial judge upon court convening the following morning prior to the formal motion for a continuance. The judge directed the sheriff to call and ascertain the witness’s condition. The call was made and the sheriff reported to the court that he was advised that the witness had made his medical rounds at the hospital that morning and that “he had left town to keep from seeing lots of patients on his day off.” The defense attorneys then conceded that the witness’s testimony would be the same as that formerly given by him; whereupon the judge advised them that they would be permitted to introduce the former testimony and refused to continue the case which was then in progress. The appellant contends the mere reading of a prominent physician’s testimony to the jury is not as effective as the witness personally testifying and therefore argues that the court erred in refusing the continuance.
The appellant did not request an attachment to issue for the doctor. In King v. State, 251 Miss. 161, 171, 168 So.2d 637, 641 (1964), we reiterated the rule announced in Lamar v. State, 63 Miss. 265, 271 (1885), for continuance as follows:
In view of the frequency of these applications we deem it advisable to repeat what has been before substantially said as to the correct course to be pursued by a defendant who applies for a continuance. To begin with, he should promptly issue summonses for all witnesses who may be material for his defense; for any witness who has been served with process and who has failed to appear as commanded he should ask for an attachment, which will never be refused by the court; . . . (Emphasis added.)
The former testimony was introduced by the defendant on a question and answer basis between the attorneys for the defense subsequent to the jury being advised by the judge the nature and reason for that procedure. We have often stated and presently adhere to the rule that the matter of continuance is within the sound discretion of the trial judge and if it does not appear this discretion is abused, the refusal to grant a continuance will not constitute reversible error. Brown v. State, 252 So.2d 885 (Miss.1971).
It is next contended that the court erred in refusing a continuance for the reason there was sufficient evidence before it from the previous trial which would dictate that the defendant was incapable of rational participation in the trial and that counsel were deprived of his assistance in a felony case. In support of this the appellant cites Mississippi Code 1942 Annotated section 2575.5 (1956); McGinnis v. State, 241 Miss. 883, 133 So.2d 399 (1961); Shipp v. State, 215 Miss. 541, 61 So.2d 329 (1952); and other cases, all to the effect that no person may be tried for a crime while he is insane, and that the suggestion of present insanity required the issue to be *475 adjudicated as a matter of right prior to the trial on the merits. These authorities are distinguished from the present sitúation by their different facts.
The medical testimony regarding the appellant’s physical and mental condition some six months prior to the present trial was that he was then physically and mentally incapable of aiding in his defense due to a diabetic condition aggravated by improper diet or insufficient insulin dosage. It is noted, however, that the medical Experts considered this incapacity to be temporary and subject to medical regulation. There was no evidence, or proffer thereof, for the trial court to act upon other than the previous testimony. In Robinson v. State, 223 Miss. 70, 81-82, 77 So.2d 265, 269 (1955), we stated:
Considering the petition or motion as a suggestion of insanity, we think that the trial court was correct in overruling it without submitting it to a jury, in view of the evidence in the aforesaid preliminary hearing. When it appears to a trial .court that there is a probability that defendant is incapable of making a rational defense, and “if the showing before the trial judge is sufficient to engender a reasonable probability that the defendant is then insane, that issue must be preliminarily submitted to a jury.” Shipp v. State, 1952, 215 Miss. 541, 550, 61 So.2d 329, 331; Williams v. State, 1949, 205 Miss. 515, 524, 39 So.2d 3; Carter v. State, 1945, 198 Miss. 523, 529, 21 So.2d 404; Pace v. State, 1953, 218 Miss. 614, 67 So.2d 521. Under this rule the trial court must necessarily be allowed a reasonable discretion in determining whether there is a reasonable probability that accused is insane, as a condition precedent to ordering a preliminary hearing with a jury on that issue. Otherwise, the mere filing of a motion by any defendant would entitle him to a preliminary trial on this issue. The evidence offered on the preliminary hearing amply supported the finding of the circuit court that there was not such a reasonable probability that appellant was incapable of conducting a rational defense, as to warrant the preliminary submission of that issue to a jury. .
Surely, we cannot state, in view of the former testimony limiting the incapacity to a particular time, that the court erred in refusing six months later to submit this issue to a jury prior to the trial on the merits. See also Eslick v. State, 238 Miss. 666, 119 So.2d 355 (1960). Since there does not appear to be a reasonable probability that the appellant was insane at the time of the trial, nor was there a request made for the attachment of the doctor, we must conclude that the court did' not abuse its discretion in refusing to continue the cause upon either of these assignments of error.
It is next contended there was error in not granting a mistrial upon motion therefor due to improper interrogation by the district attorney with reference to irrelevant matters which would tend to bias the jury against the defendant. These were undoubtedly improper and should be condemned. Cf. Wood v. State, 257 So.2d 193 (Miss.1972). In Wood, a murder case, the jury returned a verdict of manslaughter upon a very close issue of self-defense asserted by the defendant which could have resulted in his being acquitted. In this case the verdict of the jury is precisely in accord with the appellant’s own testimony and that of his witnesses which, at best, could not have resulted in his acquittal, but rather to a reduction of the charge from murder to manslaughter. Thus, we are convinced the improper interrogation did not prejudice the jury as contended. We are fortified in this determination by the fact that the issue of appellant’s insanity at the time of the occurrences was submitted to the jury under proper instruction and was rejected by it. Had the verdict been for murder the question would indeed be of serious consequence, but such is not the case. We can only conclude this assignment of error to be without merit.
*476 Finally, the appellant contends that the trial court erred in not ruling upon several motions which he had filed. We do not agree. In Brooks v. State, 242 So.2d 865, 868 (Miss.1971), we stated:
Defendant’s counsel had the duty to call the motion to the court’s attention and obtain a ruling. Not having done so, he waived any right as to the motion. .
See also Marr v. State, 248 Miss. 281, 159 So.2d 167 (1963).
We have considered the assignments of error, both singly and collectively, and it is our opinion that there is no reversible error in the record and that the verdict of the jury and the sentence imposed thereon should be affirmed.
Affirmed.
RODGERS, P. J., and JONES, INZER and ROBERTSON, JJ., concur.