359 So.2d 334 (1978)
Terry Lewis BARR
v.
STATE of Mississippi.
No. 50359.
Supreme Court of Mississippi.
May 31, 1978.
Buchanan, Haltom & Saucier, Ben L. Saucier, Indianola, for appellant.
A.F. Summer, Atty. Gen. by Henry T. Wingate, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROBERTSON, LEE and BOWLING, JJ.
BOWLING, Justice, for the Court:
Appellant was indicted, tried and convicted for the crime of murder in the Circuit Court of Sunflower County, Mississippi. He received a sentence of life under the control of the Department of Corrections.
Five assignments of error are alleged by the appellant:
1. The trial court's refusal to submit the question of present insanity of appellant preliminarily to a jury was an abusal of discretion and consequently caused a flagrant injustice to appellant;
2. The trial court erred in allowing evidence introduced on behalf of the State pertaining to the opinions of the medical experts which were partially based on tests and opinions performed by unknown persons, thus depriving appellant of his constitutional right to confront and cross-examine that witness against him;
3. The trial court erred in refusing to give instruction D-1 requested by appellant;
4. The trial court erred in refusing to give instruction D-2 requested by appellant;
5. Appellant was entitled to have his motion for a new trial sustained in that *335 the verdict of the jury was contrary to the overwhelming weight of the competent and credible evidence adduced in this cause.
This Court is compelled to reverse the cause under the first assignment of error. There is no need, therefore, to discuss the facts of this tragic occurrence.
As set out above, the first propounded assignment of error contends that the lower court should have impanelled a jury to consider preliminarily the present insanity, if any, of appellant (at the time of trial). The cases previously decided by this Court are clear on this assignment of error. Therefore, we shall discuss the cause as presented to the lower court in connection with the applicable law set out long before this cause accrued.
The incidents leading to appellant's indictment for murder occurred during the early morning hours of September 7, 1976. Appellant was arrested and incarcerated in the Sunflower County jail on the same date. On September 8, 1976, appellant, through his attorneys, filed a motion stating that they, as his attorneys, believed that a complete psychiatric examination was necessary in their representation of him, and requested an order of the court transferring appellant to a detention center in Hinds County for psychiatric and other related tests. No specific request was made in the motion as to the experts to perform these examinations. The motion was not contested by the State. On the same date the lower court issued its order directing that appellant be transferred at the earliest possible date to the custody of the sheriff or other proper person in Hinds County where he would be incarcerated and examined by "Dr. R.M. Ritter and/or consulting psychiatrists or physicians"; that the examinations were to be conducted either in the detention center or in a hospital. Pursuant to this order, appellant was transported to Jackson where he stayed approximately two weeks while being examined by Dr. Ritter and a psychologist, Dr. Billy Fox.
Upon appellant being returned to Sunflower County, the State, through the district attorney, filed a motion requesting an order of the court for an examination of appellant at the Mississippi State Hospital at Whitfield. This motion was not contested by appellant's attorneys and an order was entered on September 27, 1976, directing that appellant be transported to the Mississippi State Hospital at Whitfield for an examination by the psychiatric staff at that institution. Appellant was confined at the hospital in the maximum security unit for several weeks, during which time he was examined by staff physicians, principally Dr. Donald C. Guild. At the conclusion of the examinations, four members of the staff interviewed appellant and each staff member gave his opinion as to appellant's mental condition. This was released to the circuit judge by letter dated December 15, 1976.
The case was set for trial on February 16, 1977. On February 11, 1977, appellant's attorneys filed an instrument styled "Suggestion of Present Insanity," alleging that appellant was then incompetent and incapable of conducting a rational defense and incapable of entering a plea. The motion referred to the examination of Dr. R.M. Ritter as previously ordered by the court and to lay testimony that would be offered on the question. This motion was renewed on February 15, 1977, and a request was made for the court to impanel a special jury solely for the purpose of receiving testimony and evidence and deciding the question of the present mental ability of the defendant to make a rational defense.
At the time both motions were filed, appellant's file included two instruments: An affidavit of February 13, 1977, from Dr. Robert M. Ritter, and the letter of December 15, 1976, from Dr. Donald C. Guild, Director of Forensic Psychiatry at Mississippi State Hospital. Both of these instruments were directed to the court as a result of orders by the court for each of those persons specifically to examine appellant. Dr. Ritter's affidavit was as follows:
AFFIDAVIT
I, DR. ROBERT M. RITTER, M.D., have evaluated the mental condition of TERRY *336 LEWIS BARR and find him to be presently insane in so much as he is presently unable to distinguish the difference between right and wrong.
WITNESS this is my signature, this the 13th day of February, A.D., 1977
 /s/ Robert M. Ritter, M.D. 
 DR. ROBERT M. RITTER, M.D.
Sworn to and subscribed before me, this the 13th day of February, A.D., 1977
 /s/ John T. Haltom 
 NOTARY PUBLIC
My commission expires:
May 25, 1978
The letter from Dr. Guild was as follows:
Honorable Judge Arthur B. Clark, Jr. Court House Indianola, Mississippi
Re: Terry L. Barr
Dear Judge Clark:
Mr. Terry Barr is a twenty-eight year old white male who was admitted to the maximum security unit of the Mississippi State Hospital on 9/28/76 for psychiatric observation and evaluation.
Mr. Barr has undergone extensive psychiatric observation and evaluation as well as psychological testing and has been presented to the full staff.
It was the unanimous decision of the forensic staff that Mr. Barr was both competent and responsible but there was considerable disagreement among the staff as to the exact diagnostic label that should be placed on Mr. Barr. Four members of the staff felt that Mr. Barr represented a Paranoid Personality and was non-psychotic. Another member of the staff felt that Mr. Barr represented Schizophrenia, Latent Type, and was currently non-psychotic but a borderline state. Another member of the staff, who has been at the hospital some time and is quite a knowledgable psychiatrist, agreed with Dr. Ritter that Mr. Barr represented a Paranoid state.
This is obviously a case where competent psychiatrists could have legitimate disagreements. We did, however, unanimously agree from what we are told, that he is both competent and responsible although there are significant emotional, psychological, psychiatric considerations which should be taken into account.
We did have opportunity to interview Mr. Barr's wife and his brother and this was considerably helpful. The attorneys in Mr. Barr's case were initially quite co-operative and helpful to us but towards the end apparently decided that it would not be wise to release Dr. Ritter's report and did not make available to us Mr. Barr's very close friend who might have been a deciding factor. The attorneys for Mr. Barr did state that his friend could be available on the weekend but we felt that if his attorneys considered it that critical they could have made Mr. Barr's friend available to us during the regular working week since the other Barrs had been interviewed on a weekend which is not usual State Hospital policy.
We hope that we have in no way offended the attorneys for Mr. Barr and that they do not feel that we are in anyway prejudiced or acting in anybody's behalf. I look forward to and hope to work well with both prosecution and defense since I consider our role at the State Hospital to act as a friend of the court.
If I can be of any further assistance to you, please do not hesitate to contact me. Sincerely,
/s/ Donald C. Guild, M.D.
Director of Forensic Psychiatry
cc - Honorable George A. Everett,
 District Attorney, 4th District
 Sheriff C.O. "Jack" Sessums
 Mr. Sam J. Ely, Jr.,
 Circuit Clerk
 Honorable Ben L. Saucier,
 Attorney at Law
On February 15, 1977, the lower court entered its order as follows:
This cause coming on this day to be heard upon the Motion of the Defendant, by and through his attorneys requesting the Court to impanel a jury solely for the purpose of receiving testimony and evidence as to his ability to make a rational defense and whether or not he is competent *337 to stand trial, and the Court upon hearing the same, is of the opinion that said Motion is not well taken and should be denied.
THEREFORE, IT IS, HEREBY ORDERED AND ADJUDGED that said motion for special jury is hereby denied. ORDERED AND ADJUDGED, this the 15th day of February, A.D. 1977.
 /s/ Arthur B. Clark 
 Circuit Judge
The next procedure we find in the record is dated February 16, 1977. It is a transcript of testimony received by various individuals and the examining physicians on the question of appellant's mental condition. At the beginning of this transcript there is written "Without a Jury." There is no order setting the cause for a preliminary hearing before the court without a jury on the present insanity issue. This is immaterial as it is clear that the court, realizing that a question existed as to appellant's mental condition, decided to hear this question without a jury before the trial under the indictment.
In previous cases this Court clearly has set out the conditions under which a person charged with a crime is entitled to a preliminary jury decision of his present mental capacity. In the case of Shipp v. State, 215 Miss. 541, 61 So.2d 329 (1952), the Court said:
"It is a rule of universal application, and founded on the broad principles of humanity, that no insane person shall be tried, sentenced to any punishment, or punished for any crime or offense, while he continues in that state."
If the showing before the trial judge is sufficient to engender a reasonable probability that the defendant is then insane, that issue must be preliminarily submitted to a jury. "`But if there be any doubt whether the party be compos or not this shall be tried by a jury.' Wendell's Blackstone's Commentaries, vol. 4, p. 25." First Hawie case, supra.
In Williams v. State, 205 Miss. 515, 39 So.2d 3, it was said: "The trial of a defendant, when his mind is so clouded that he cannot remember and intelligently relate what occurred at the time of the commission of the alleged offense, is a denial of due process and contrary to public policy, and when it appears to the trial court that there is a probability that defendant is incapable of making a rational defense, the trial should not proceed until defendant's mental condition has been investigated and it appears he is sufficiently rational to make defense. Carter v. State, 198 Miss. 523, 21 So.2d 404; Hawie v. State, 121 Miss. 197, 83 So. 158, 10 A.L.R. 205. We urge upon the trial courts to observe this constitutional right of defendants, with meticulous care, and submit to the jury, preliminarily, the issue of the defendant's sanity in all cases where there is a probability that defendant is incapable of making a rational defense."
In the case of Pace v. State, 218 Miss. 614, 67 So.2d 521 (1953), we reiterated the pronouncement in Shipp and said:
Whenever a sufficient showing is made before the trial judge by affidavits, certificate or otherwise to disclose a reasonable probability that a defendant is mentally incapable of conducting a rational defense, a jury should be impaneled to try this issue preliminarily to a trial on the merits, since he is entitled to have a jury pass upon this important issue not unduly influenced by the prejudical testimony that may be developed upon a trial of the issue of his guilt or innocence of the crime charged. No insane person should be tried or punished for any crime while he continues insane, without regard to how strong the case for the prosecution may be against him.
In the recent case of Williamson v. State, 330 So.2d 272 (Miss. 1976), the Court made the following comment:
Ordinarily, where there is a serious question of an accused's sanity or competency to stand trial, that issue should be submitted to a separate jury prior to a trial on the merits of the charges against the accused.
*338 Now let us look at the undisputed situation at the time the lower court entered its above set out order of February 15 denying appellant's motion for a special jury. The court had before it the sworn affidavit of the admittedly competent psychiatrist whom the court had ordered to examine appellant, an examination that took approximately two weeks. The State admitted that Dr. Ritter was a competent man in his field and qualified to give opinions based on his examinations. He stated under oath on February 13, 1977, three days before the trial date, that the appellant was "presently insane in so much as he is presently unable to distinguish between right and wrong."
The letter from Dr. Donald C. Guild, hereinbefore set out in its entirety, advised that the four members of the staff who were involved in the examinations of appellant had three different opinions as to the proper diagnosis. One doctor, according to Dr. Guild, "agreed with Dr. Ritter that Barr represented a paranoid state." The other three staff members, as stated above, had two different opinions; all were of the opinion that appellant represented a paranoid personality and was non-psychotic. Another member was of the opinion that appellant represented schizophrenia, latent type.
At this point, it was incumbent on the lower court under the above quoted Court opinions to determine whether or not there was a reasonable probability that the mental condition of appellant was such that he was incapable of being tried at that time. If this was the situation, it was imperative that a special jury be impanelled to decide this question preliminarily to the trial without being exposed to the facts of incidents leading to the indictment. At this point, as shown, above, the lower court had the sworn affidavit of the court's appointed specialist stating positively that appellant was insane. It had a report from the Mississippi State Hospital physicians that was very indefinite and conflicting among themselves with at least one agreeing with Dr. Ritter. Therefore, we are forced to the conclusion that at this point there necessarily was a reasonable probability that appellant was of such mental condition that the law could not force him to trial without a preliminary hearing by a special jury on this question.
To further emphasize the above opinion of the court, we take notice that although on February 15 the lower court denied the special jury, nevertheless, he was of such doubt that on the following day he conducted a hearing on the question without a jury.
It is inescapable that under the record in this case the lower court should have impanelled a special jury to hear evidence and receive testimony on the appellant's mental condition at that time, and the failure to do so is reversible error.
The only other assignment of error we think should be discussed at this time is Instruction D-2 submitted by and refused appellant, which reads as follows:
The Court instructs the jury that if, after considering all the evidence in this case, there remains in your mind a reasonable doubt as to whether or not the Defendant, at the time he committed the alleged act, was suffering from any mental disease, from any cause, which prevented him at such time of committing the alleged act, from knowing the difference between right and wrong with reference to said alleged act, then you cannot, under your oaths, find the Defendant guilty of murder.
This identical instruction was requested and refused by the lower court in Myrick v. State, 290 So.2d 259 (Miss. 1974). We held there that the instruction was proper and should have been granted. We further held, however, that the other instructions given the State and the defendant sufficiently and adequately guided the jury on the question raised by the instruction.
As announced by this Court many times, all instructions should be read together, and if the jury is fully and fairly instructed by other instructions, the refusal of a similar instruction is not reversible error. We have examined all the instructions in the record and do not find that the *339 principle requested in defendant's Instruction D-2 was sufficiently submitted to the jury without the granting of the refused instruction. If and when the cause should reach the point of submitting instructions to another jury and the granting of instructions is in the same state as the present record, we hold that defendants refused Instruction D-2 should be granted.
REVERSED AND REMANDED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE and COFER, JJ., concur.