412 So.2d 1187 (1982)
Charles Edward EMANUEL
v.
STATE of Mississippi.
No. 53175.
Supreme Court of Mississippi.
April 21, 1982.
*1188 Louis Fondren, Pascagoula, for appellant.
Bill Allain, Atty. Gen. by Frankie Walton White, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
WALKER, Justice, for the Court:
Charles Edward Emanuel was convicted and sentenced to life imprisonment for the murder of Michelle Pino in the Circuit Court of Jackson County. Feeling aggrieved, he appeals. We affirm.
The first question which we address is whether the court erred in refusing to grant a jury hearing to the defendant on the question of his mental competency to stand trial.
The trial of a defendant, when his mind is so clouded that he cannot remember and intelligently relate what occurred at the time of the commission of the alleged offense, is a denial of due process and contrary to public policy, and when it appears to the trial court that there is a probability that defendant is incapable of making a rational defense, the trial should not proceed until the defendant's mental condition has been investigated and it appears that he is sufficiently rational to make a defense. Barr v. State, 359 So.2d 334 (Miss. 1978); Pace v. State, 218 Miss. 614, 67 So.2d 521 (1953); Shipp v. State, 215 Miss. 541, 61 So.2d 329 (1952); Williams v. State, 205 Miss. 515, 39 So.2d 3 (1949); Carter v. State, 198 Miss. 523, 21 So.2d 404 (1945); Hawie v. State, 121 Miss. 197, 83 So. 158, 10 A.L.R. 205 (1919).
In Williamson v. State, 330 So.2d 272 (Miss. 1976), we commented:
Ordinarily, where there is a serious question of an accused's sanity or competency to stand trial, that issue should be submitted to a separate jury prior to a trial on the merits of the charges against the accused. (330 So.2d at 275).
When the competency of a defendant to stand trial is raised, the trial court should preliminarily, prior to trial, conduct a hearing to determine whether there is a probability that defendant is incapable of making a rational defense.
It naturally devolves upon the defendant to go forward with the evidence to show his probable incapacity to make a rational defense.
After hearing all the evidence, the trial judge should weigh the evidence and make a finding as to whether there is a probability that defendant is incapable of making a rational defense. If the evidence shows such a probability, then the trial court should impanel a jury to decide that issue prior to trial on the merits.
If the trial court is of the opinion, after weighing the evidence both for the state and the defendant, that there is not sufficient proof to show a probability that defendant *1189 is incapable of conducting a rational defense, he should make such finding a matter of record. The case may then proceed to trial on the merits.
When the trial court has made a finding that the evidence does not show a probability that the defendant is incapable of making a rational defense, we will not overturn that finding unless we can say, from the evidence, that the finding was manifestly against the overwhelming weight of the evidence. The evidence must show more than a possibility that defendant is incompetent to stand trial  the evidence must go further until it appears to the trial court that there is a probability that defendant is incapable of making a rational defense. In this initial inquiry, the trial judge must weigh the evidence and be the trier of the facts.
In the case sub judice, the defendant filed his motion containing a suggestion of insanity and requested a mental examination. That motion was sustained, and an examination was conducted. Later, the defendant was sent to Whitfield for further mental examination.
Thereafter, the trial judge conducted a preliminary hearing on the question of whether there was a probability that the defendant was incapable of aiding and assisting his attorney in conducting a rational defense. At the hearing, he heard the testimony of Dr. Kent Walter Andrews, PhD, a psychologist, also Dr. Malcolm Latour, a psychiatrist, and Dr. William D. Bridges, a psychiatrist. Additionally, the court heard the testimony of the defendant's mother, Mrs. Barbara Emanuel. After hearing extensive testimony from these witnesses, which included a probing, lengthy cross-examination as well as a series of questions propounded by the court, observing the witnesses, and weighing the evidence before it, the court found that there was no probability that the defendant, Emanuel, was insane or incompetent to aid and assist his attorneys in presenting a rational defense.
The court summed up its findings as follows:
BY THE COURT: Alright. Well, all three doctors have testified that he knows right from wrong, Mr. Fondren. So, I think that there is not even a remote possibility of insanity, based on the testimony before the Court that two psychiatrists and one psychologist have examined him and determined that he does know right from wrong at the time they examined him and at the time the crime was committed. They all agree that he is in the average to low-normal  and I'll just take low-normal as the testimony  range of intelligence. All have testified he has ability to recall events that have happened in the past and to relate them; so there is no probability or reasonable probability that the Defendant is insane. Quite the contrary from all three doctors' testimony. All three have unequivocally stated that he is, in fact, sane. In fact, Dr. Andrews said he has concrete understanding of the charges against him and various factors and facts that pertain thereto. The only discrepancy is whether he is suffering from schizophrenic personality or not, or whether it's drug influenced. He told Dr. Bridges about his drugs. But all three have agreed that, even if he had a schizophrenic personality, this, in itself, would not prevent him from being of assistance. That is a character or personality defect which has certain trends and characteristics. All three have testified that this defendant could tell you the facts that occurred and could help you, as attorney, to prepare for trial before trial. They have all three indicated that he would be emotional and have problems reacting under stress, but the most intelligent person in the world ... in fact, some of the geniuses that we have can't handle stress very well and, in varying degrees, some of them handle it very poorly. So, that's nothing abnormal, or certainly, nothing to prevent him from aiding you in the trial. This is normal, depending on the various individuals. I think all three doctors have indicated that, during trial, whether you should put him on the stand or not may be a question that needs to be resolved by you, and *1190 how much assistance he can be, and so forth. But that's a matter for the attorney to determine  what's the best way to use his witness. And that's not unusual, and certainly it's not because of any mental condition. It's a question of personality and his own character. So, there's nothing to give this Court any reasonable probability to suspect that the defendant is insane or incapable of aiding the preparation of his trial. I think what all three doctors have indicated, he will probably make you a very poor witness should you decide to put him on the stand. And of course, that is true that people of high intelligence make a poor witness at times, so that's no grounds for saying that he can't stand trial. But, anyhow, on your motion to have a jury trial, there is simply no evidence. Even his own doctor has testified that he is sane. Two of them indicate they feel like he has some schizoid personality defect. The thing that concerns this Court most is that all of them have indicated that this defendant, placed under the same or similar circumstances, could be expected to commit the same crime again. Some of them have indicated that it is progressive; he can be expected to kill again in the future. Now, this is a great deal of concern, I think, to this Court and to everyone who happens to have to deal with matters of a criminal nature. But it certainly doesn't mean that he can't stand trial or aid in the preparation of his defense. That's the only issue that is before the Court now. Based on the three doctors' testimony, it's undisputed that he is sane; and there is no jury issue presented by this testimony for me to submit to a jury on a separate trial. So, I'll overrule the motion for a jury trial on the issue of insanity or ability to stand trial. .. .
Based on all the doctors' testimony, however, during the trial, should you need to consult with your defendant, since they've said he does have a tendency to become emotional, I will allow you certainly, in order to consult with your client if you feel it necessary and can't do it in the courtroom, I will allow you ample time to have a recess and take your client out to a room where you can sit down and talk to him if that becomes a problem. And I will assure you that I'm going to do everything to see that he receives a fair and impartial trial. I will not rush the trial in any way, in view of the doctors' testimony about his problems in handling emotional situations and stress situations; but I will give you that benefit. So, if you feel during the trial that you need some extra time to talk to him, you can bring it to the Court's attention and I'll take care of it at that time. Okay? BY MR. FONDREN: Thank you, Your Honor. (Emphasis added).
We have carefully reviewed this record, including the testimony of the above named witnesses, much of which was conflicting, and are unable to say that the findings of the trial judge with reference to whether there appeared to him a probability that Emanuel was insane or incompetent to aid and assist his attorneys in presenting a rational defense were manifestly against the overwhelming weight of the evidence.
Therefore, the trial court properly denied Emanuel a preliminary jury trial on that question.
The appellant, Emanuel, next assigns as error that the court denied him an instruction which informed the jury that if Emanuel was found not guilty by reason of insanity and that he was dangerous to the community, that he would be confined in a mental institution.
The appellant cites Pouncy v. State, 353 So.2d 640 (Fla.App. 1977), which approves this type instruction. However, it is well settled in this State that, in cases of this nature, the jury's role is to find the defendant guilty or not guilty by reason of insanity stating whether the accused has since been restored to his reason and whether he be dangerous to the community. The possible consequences of either of such verdicts are not a matter upon which the jury should be informed. Miss. Code Ann. § 99-13-7 (1972); Hill v. State, 339 So.2d 1382 (Miss. 1976); Gambrell v. State, 238 Miss. 892, 120 So.2d 758 (1960).
*1191 The jury's verdict of guilty and judgment of the court were amply supported by the evidence and law.
Therefore, the judgment of the circuit court of Jackson County is affirmed.
AFFIRMED.
SMITH, P.J., and BROOM, ROY NOBLE LEE, BOWLING and DAN M. LEE, JJ., concur.
HAWKINS, J., PATTERSON, C.J., and SMITH and SUGG, P. JJ., specially concur.
HAWKINS, Justice, specially concurring:
I concur in the result reached in this case, but I would clear the air of solemn pronouncements which have proved meaningless and are never applied.
Is an accused entitled to a jury trial on the sole issue of his present mental competency to stand trial? In my view this is a question addressed solely to the discretion of the circuit judge, and it is unnecessary and inappropriate to empanel a jury to try this one issue. This question has nothing to do with his guilt or innocence, only with his present ability to go to trial.
Beginning with Shipp v. State, 215 Miss. 541, 550, 61 So.2d 329, 331 (1952), this Court stated:
If the showing before the trial judge is insufficient to engender a reasonable probability that the defendant is then insane, that issue must be preliminarily submitted to a jury. `But if there be any doubt whether the party be compos or not this shall be tried by a jury.' (emphasis added).
The right to trial by jury on the sole issue of present mental competency to stand trial was set out again in Robinson v. State, 223 Miss. 70, 77 So.2d 265 (Miss. 1955); Olsen v. State, 224 Miss. 226, 79 So.2d 841 (Miss. 1955); and Pace v. State, 218 Miss. 614, 67 So.2d 521 (1953). In 1960, however, the Legislature enacted 1960 Miss. Laws, ch. 262, codified at Miss. Code Ann. § 99-13-11 (1972), which set forth the procedure for determining whether an accused is mentally able to stand trial:
In any criminal action in the circuit court in which the mental condition of a person indicted for a felony is in question, the court or judge in vacation on motion duly made by the defendant, the district attorney or on the motion of the court or judge, may order such person to submit to a mental examination by a competent psychiatrist selected by the court to determine his ability to make a defense. ... (emphasis added).
Nothing is said in this section about the right to a jury determination. In McGinnis v. State, 241 Miss. 883, 893, 133 So.2d 399, 402 (1961), this Court construed the statute, stating:
The said Chapter 262, Laws of 1960, providing for the trial judge to order an examination of the accused by a psychiatrist when he is shown to be probably insane and incapable of conducting a rational defense has the effect of supplementing the former rule requiring the trial judge to impanel a jury to try such an issue preliminarily to the trial on the merits.
Departure from this rule of requiring a jury to try the present competency of a person to stand trial was further evidenced in Brown v. Jaquith, 318 So.2d 856 (Miss. 1975). Finally, Rule 4.08 of the Uniform Criminal Rules of Circuit Court Practice specifically and in detail sets forth the procedure to be followed by the circuit judge when present mental incompetency is brought to the attention of the court. There is no requirement whatsoever for a jury in this Rule.
I would, therefore, expressly overrule all previous holdings by this Court that a defendant is entitled to a jury, under any circumstances, to try the sole issue of his present mental competency to stand trial. The matter should not be left to future argument, conjecture and confusion.
The instant case affords an excellent example wherein this issue, because of the conflicting evidence before the trial judge, should have gone to the jury. The accused, though not mentally retarded, was classified as a slow learner suffering with a progressive schizoid personality.
*1192 The trial judge was not manifestly wrong in his finding that the defendant was competent to stand trial. Conflicting evidence warranting a jury determination was before him, however. For example, Dr. Kent W. Andrews, a psychologist, testified that the defendant:
... is not capable of fully assisting in his own defense... .
* * * * * *
My opinion is that he's probably not capable of providing the information that would enable his attorney to deal with the safeguard ... legal safeguards... .
* * * * * *
I think that there is information concerning his behavior on that evening that he is not capable of presenting. And if his inability to present that information to his attorney interferes with his defense, then I would say that it would interfere.
Dr. Malcolm Latour, a psychiatrist, testified:
Under the real, adverse situation in a court setting where there would be additional stresses put ... brought to bear, where there would be confrontations, where there might be severe distortions presented, I think he would become more disorganized and really could not effectively aid in his own defense. That is my opinion.
* * * * * *
He didn't actually know what the proceeding was for today. He did not know.
As to his ability to assist his counsel, Dr. Latour stated:
A. I think it will be very negligible ... negligible. I think if he becomes  and I think it's predictable that he will become disorganized or that he will be withdrawn, apathetic, sort of looking around, not staring blankly, grinning maybe, not caring. I don't think he can be of much help.
Q. So, he would not contribute to his own defense at trial.
A. Not adequately.
* * * * * *
He can't handle new situations; and believe me, being tried for murder is not only a new situation, but it's a very stressful situation.
* * * * * *
And I believe if he is apathetic or if he is decompensating, that he will not be able to help his attorney. He just won't.
Q. But, of course, under stressful situations such as a court trial, what would be the effect?
A. He would become more disorganized and less able, less functional.
Q. And so that his regression would become more obvious in a court trial as time goes by?
A. Yes.
This testimony relates evidence showing his inability to stand trial. There was other testimony to the effect he was capable to stand trial. If the matter had been left solely to the discretion of the trial judge, as it should in these cases, I do not think the trial judge abused his discretion. On the other hand, if this Court is going to adhere to the rule that an accused is entitled to a jury trial to determine his present mental competency to stand trial, sufficient evidence was adduced, in my view, to make a jury issue on this point.
By approving the trial judge's finding, this Court has de facto overruled precedent requiring a jury determination of mental competency to stand trial, where conflicting testimony has been presented to the trial judge. I think we should so state.
PATTERSON, C.J., and SMITH and SUGG, P. JJ., join in this specially concurring opinion.