# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-KA-01009-SCT

*JOHNNY CARL BRIDGES*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 3/24/1999 |
| TRIAL JUDGE: | HON. JERRY O. TERRY, SR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | LISA D. COLLUMS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEIRDRE McCRORY |
| DISTRICT ATTORNEY: | CONO A. CARANNA, II |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 02/21/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 3/14/2002 |

**BEFORE SMITH, P.J., COBB AND DIAZ, JJ.**

**DIAZ, JUSTICE, FOR THE COURT:**

¶1. Johnny Carl Bridges was convicted in the Circuit Court of Harrison County, First Judicial District, for the murder of his ex-wife, Vivian Bridges, and was sentenced to life imprisonment. Bridges now appeals his conviction, citing the following issues for review:

> **I. WHETHER THE TRIAL COURT ERRED WHEN IT FOUND BRIDGES COMPETENT TO STAND TRIAL.**

> **II. WHETHER THE TRIAL COURT ERRED IN DENYING BRIDGES'S MOTIONS FOR DIRECTED VERDICT, JNOV, OR FOR NEW TRIAL.**

## FACTS

¶2. The afternoon of December 28, 1997, Vivian Bridges was shot to death while in the driver's seat of her car. Her and Bridges's daughter, Quishanna, was in the passenger seat, and her seven-year-old nephew, Cedric, was in the rear seat of the car. At trial, Cedric testified that it was Bridges who shot his rifle into the car and, after the car crashed into the bushes, Bridges broke the glass, removed Quishanna from the car and carried her away.

¶3. A cousin and neighbor of Bridges, Michael Bledsoe, testified that he heard "some loud cracks" that afternoon, looked out of his window and saw Vivian Bridges's car crashing into the bushes. Bledsoe then saw Bridges walking away with a rifle and called the police.

¶4. Another of Bridges's neighbors, Michael Stowers, was outside his house that afternoon and testified that he heard a gunshot, saw "a glimpse of something pass by," and saw Bridges standing in the road with a gun in his hand. Stowers went into his house to notify the police. While inside, Stowers heard more gunshots and went back outside. There he saw Bridges walk toward his truck while carrying a child and his gun. Bridges stopped at his truck, laid his gun on the hood of his truck, and continued to care for the child in a calm manner.

¶5. A police officer testified that as he was reading the waiver portion of the pre-printed *Miranda* form, Bridges interrupted several times saying, "I did it," "I left the gun out on the truck where y'all could find it," and "I didn't resist."

¶6. Bridges testified that he remembered having an argument with Vivian's boyfriend on December 25, 1997, but that he could not remember what happened on December 28, 1997, the day of the shooting.

¶7. A competency hearing was held prior to the trial. The State called Dr. Henry Maggio whom the court accepted as an expert in the field of forensic psychiatry, and the defense called Bridges to testify in his own behalf. Dr. Maggio evaluated Bridges in person and found him to be competent to stand trial, concluding that Bridges was in touch with reality, that his memory was adequate, that he did not suffer from mental retardation, and that he did not have a history of drugs or alcohol that would serve as an impediment. Dr. Maggio further testified that Bridges

> knew why he was in jail and he understood the proceedings of the part played by all the principals in a court hearing such as the prosecuting attorney is the district attorney who would bring charges against him; his defense attorney would stand up and present a defense; the judge was the presiding officer that would rule on matters of law and also interpret the judgment given by the jury and then would give the sentence accordingly. . . . He understood that- the process in which he discharged a firearm and killed his wife, and answered questions that he knew he had done something wrong.

Dr. Maggio found that Bridges had the capability to inform his attorney of pertinent facts pertaining to the shooting.

¶8. Bridges testified that he was taking medication for depression and did not recognize Dr. Maggio. Bridges also testified that Dr. Maggio "cussed" Bridges during the interview.

¶9. The trial court found Dr. Maggio's testimony to be credible and that Bridges was competent to stand trial.

**DISCUSSION**

## I. WHETHER THE TRIAL COURT WAS IN ERROR WHEN IT FOUND BRIDGES COMPETENT TO STAND TRIAL.

¶10. It is a denial of due process and contrary to public policy to try a defendant when it appears to the trial court that there is a probability that defendant is incapable of making a rational defense. When the competency of a defendant to stand trial is raised, the trial court should conduct a hearing prior to the trial to determine whether there is a probability that the defendant is incapable of making a rational defense. If the trial court finds that "there is not sufficient proof to show a probability that defendant is incapable of conducting a rational defense, he should make such finding a matter of record. The case may then proceed

to trial on the merits." ***Emanuel v. State***, 412 So.2d 1187, 1188-89 (Miss. 1982). This Court may not overturn that finding unless that finding was "manifestly against the overwhelming weight of the evidence." ***Id.*** The evidence must show more than a possibility that defendant is incompetent to stand trial. ***Id.***

¶11. The trial court accepted Dr. Maggio as an expert in the field of forensic psychiatry. Dr. Maggio thoroughly examined Bridges and testified at the competency hearing in detail that Bridges was competent to stand trial. Bridges offered no evidence to rebut Dr. Maggio's opinion. The trial court found that Bridges was competent to stand trial. There was sufficient evidence upon which the trial judge based his decision and that decision is not manifestly against the overwhelming weight of the evidence. Therefore, this issue is without merit.

## II. WHETHER THE TRIAL COURT ERRED IN DENYING BRIDGES'S MOTION FOR DIRECTED VERDICT, J.N.O.V., OR FOR NEW TRIAL.

¶12. In his second assignment of error, Bridges reiterates his first argument that the trial judge should have found him incompetent to stand trial and adds that the trial judge doubled his error by denying his motions for directed verdict, JNOV, and new trial for the same reasons. Bridges cites no authority to support this argument. Due to the fact that Bridges does not present any supporting authority, we could summarily dismiss this issue. However, we will discuss this issue on the merits.

¶13. Motions for directed verdict and for JNOV challenge the sufficiency of the evidence supporting the verdict. ***McClain v State***, 625 So. 2d 774, 778 (Miss. 1993). Where a defendant moves for JNOV or a directed verdict, the trial court considers all of the credible evidence consistent with the defendant's guilt, giving the prosecution the benefit of all favorable inferences that may be reasonably drawn from this evidence. ***Id.*** This Court is authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence is such that reasonable and fair-minded jurors could not find the accused guilty. ***Wetz v. State***, 503 So. 2d 803, 808 (Miss. 1987).

¶14. Motions for new trial challenge the weight of the evidence supporting the verdict The decision to grant or deny this motion is discretionary with the trial court. ***McClain***, 625 So. 2d at 781. The trial court should grant a new trial motion only when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would be to sanction an unconscionable injustice. ***Wetz***, 503 So. 2d at 812 . In reviewing the trial court's denial of a new trial motion, we must accept as true all evidence favorable to the State, and we may not reverse absent an abuse of discretion. ***McClain***, 625 So. 2d at 781.

¶15. A staggering amount of evidence supports the verdict of guilty in this case. Vivian's nephew, Cedric, gave eyewitness testimony that Bridges shot his rifle into Vivian's car. Two different neighbors saw Bridges walk away from Vivian's crashed car carrying a rifle immediately after they heard gunshots. And finally, Bridges confessed to shooting Vivian to a police officer.

¶16. Given the amount and directness of this evidence, we cannot say that reasonable and fair-minded jurors could not find Bridges guilty or that the verdict is contrary to the overwhelming weight of the evidence. The trial court did not err in denying Bridges's motions for directed verdict or new trial. Accordingly, this issue is without merit.

## CONCLUSION

¶17. The trial court's finding that Bridges was competent to stand trial is not against the overwhelming

weight of the evidence, and the trial court did not err in denying Bridges's motions for directed verdict or new trial. Therefore, the trial court's judgment is affirmed.

¶18. **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**PITTMAN, C.J., McRAE AND SMITH, P.JJ., WALLER, COBB, EASLEY, CARLSON AND GRAVES, JJ., CONCUR.**